[*585]          *COATES *against* THE MAYOR, ALDERMEN, and COMMON-
ALTY of the city of New York.(a)

*South Trinity Yard.*
A statute, (2 R. L. 445, s. 267,) declared to be a public act, authorized the corpora-

ON error from C. P. of the city and county of New York. The action in the court below was debt by the corporation of the city of New York against Coates, for $250, the penalty of a by-law.

tion of the city of New York to make various by-laws, when they should deem them necessary and proper; "and for regulating, or if they find it necessary, preventing the interment of the dead," within the city. The corporation passed a by-law prohibiting the interment of dead within certain parts of the city, under a penalty; notwithstanding which certain persons interred dead bodies in the part of the city to which the by-law related; the interment was by persons having a right under grants of, or titles to land holden in trust for the sole purpose of interment, some of which had been used for that purpose for more than a century, and to some of which certain fees for interment were incident, and belonged to the persons interring. A further right was also claimed by individual vault Þwners, in whose behalf some of the interments were made.

*Held*, that the by-law was valid and operative as to all these interments.

The act under which it passed is not unconstitutional, either as impairing the obligation of contracts, or taking private property for public use, without compensation; but stands on the ground of being an authority to make police regulations in respect to nuisances.

*Held*, that the by-law need not recite or adjudge, on its face, that it was necessary; but such necessity was implied by the act of passing it.

*Held*, also, that a declaration for the penalty of the by-law need not aver that such by-law was necessary.

*Necessity*, as intended by the statute, is nearly synonymous with *expediency*, or what is necessary for the public good.

*Held*, that the length of time, 100 years, during which part of the premises in question had been used for interring the dead, was not conclusive against the power of the legislature, or the corporation, to pass the laws.

*Held*, also, that though premises be granted for a certain purpose, and long used for that ·purpose, this will not prevent the use afterwards being treated as a public nuisance.

Though a corporation grant lands for the purpose of interment, and even covenant that they shall be quietly enjoyed for that purpose, they are not thereby estopped afterwards to pass a by-law, forbidding such interment, under a penalty.

Such a by-law repeals the covenant.

*Semb.* the powers of the corporation of the city of New York, depends on statute which has superseded their original charter, especially as to those things in relation to which the statute makes provisions, either agreeing with or differing from the charter.

Form of declaring for the penalty of a corporate by-law. What such declaration should contain. *Per cur.* at the close of their opinion.

(a This, with the 3 causes argued at the same time, were decided at the last August term.

The declaration recited parts of the charter of the city; and the statute of April 9th, 1813, (2 R. L. 445, s. 267,) relating to the city; which provides as follows: "That the mayor, aldermen and commonalty of the said city, in common council convened, shall have full power and authority to make and pass such by-laws and ordinances, as they shall from time to time, deem proper and necessary, for regulating, or, if they shall find it necessary, preventing the interring of the dead within the said city." That *the act also authorized the imposition of a penalty for violating the by-law, not exceeding $250, recoverable in debt by the corporation. That on the 7th October, 1823, " at, &c., at a meeting and assemblage of the said common council duly held and convened, was passed a law entitled, &c., in and by which said by-law or ordinance it was ordained, among other provisions, that no person shall dig or open any grave, &c, in any burying ground, cemetry or church-yard, or in any other part or place in this city, which lies to the southward of a line commencing at the centre of Canal street on the North River, and running through the centre of Canal street, &c., to the East River· or shall inter or deposit, or cause &c., in any such grave, or in any vault or tomb, any dead body within the limits aforesaid, under the penalty of $250 for every such offence." That after the passing of this by-law, and before the commencement of this suit, to wit, on the 10th day of April, 1824, Coates, the defendant below, did inter or deposit a body in a vault or tomb, in what is commonly called the Trinity Church-yard, in the first ward of the city, to the southward of the line mentioned in the by-law, &c. By means, whereof, &c.

Plea, that the place in which the interment took place, is part of a close called Trinity Church-yard, situate in the first ward of the city of New York, mentioned, &c., in certain letters patent, dated May 6th, A. D. 1697, granted under the authority of William 3d, king of Great Britain, &c., whereby divers persons were constituted a body corporate, by the name of "The Rector and Inhabitants of the city of New York, in communion of the Protestant Episcopal

ALBANY,
Oct. 1827.

Coates
v.
The Mayor, &c.
of New York.

[*586]

ALBANY,
Oct. 1827.
Coates
v.
The Mayor, &c.
of New York.

church of England." That the letters patent confirmed to that corporation, and to their successors for ever, the piece of land, as and for a church-yard, cemetery and burying place, with &c., the rights, customs, fees, perquisites, profits, &c., as the same were then in the possession of that corporation. That at, and immediately after the grant, the land was appropriated and used by the corporation as a cemetery and burying place, for the interment of dead bodies within the same, at and for certain fees, *perquisites and profits, then and there charged, demanded, taken and received for such interments respectively, to the use and benefit of the corporation. That the rectors, church-wardens and vestrymen of Trinity Church, are the same corporation with the one before described, having all their rights in respect to the *locus in quo.* That at the time when the dead body was interred or deposited in the vault or tomb mentioned, the defendant was the sexton, and in the service and employment of Trinity Church; and, as such, had the charge or custody of the vault or tomb; and with the leave and license of this corporation, entered and deposited the dead body as he lawfully might.

[*587]

General demurrer and joinder.

The following causes were also on error from the same court, upon a declaration similar to the above in each.