METROPOLITAN BOARD OF EXCISE v. JOHN BARRIE.

SAME v. JOHN F. CURRIER.

JOHN BARRIE v. JACKSON S. SCHULTZ.

WILLIAM BURKE v. JACKSON S. SCHULTZ.

PEOPLE ex rel. JOSEPH M. KETCHUM v. JAMES H. CORNWELL.

The legislature of this State have the constitutional right to regulate and con-
trol the traffic in intoxicating liquors.

Neither the State nor United States Constitution limits the legislative discretion
in regulating the traffic in articles intimately connected with public morals,
safety and prosperity.

A law prohibiting the indiscriminate traffic in intoxicating liquors, and placing
the trade under public regulation, to prevent abuse in their sale and use,
violates no constitutional restriction.

Licenses to sell liquors are not contracts between the State and the licensee,
giving the latter vested rights, protected on general principles, or by the Con-
stitution of the United States, etc.

Such licenses are mere temporary permits, to do what otherwise would be unlaw-
ful; and are not property, in any legal or constitutional sense.

The act of April 14, 1866 (Laws, 1866, ch. 578), creating the Metropolitan
Board of Excise, in this State, declared to be constitutional.

APPEALS from the Supreme Court. The first two of the
above entitled causes are appeals from judgments of the
General Term of the Supreme Court in the first judicial
district, recovered against the defendants by the Metropoli-
tan Board of Excise created by the act of April 14, 1866
(Laws of 1866, chap. 578), for penalties for publicly selling
liquors without license, in violation of such statute, such sale
in the Barrie case being on a week day, and in Currier's case
on Sunday.   In each of the cases the defendants took license
in 1865, under the excise law of 1857, which license would
not expire by its terms until a time subsequent to the making
of the sales in question.

*F. J. Fithian* and *H. L. Clinton,* for the appellants.

*Chas. Tracy, George Bliss, Jr.,* and *S. D. Morris,* for the
respondents.

WRIGHT, J. In April, 1866, the legislature passed an act to regulate the sale of intoxicating liquors within the "Metropolitan Police District of the State of New York," excluding the county of Westchester. (Laws of 1866, chap. 598.) The civil division of the State, so called, is constituted of the counties of New York, Kings, Westchester and Richmond, and the towns of Newtown, Flushing and Jamaica, in the county of Queens. (Laws of 1859, chap. 569 ; Laws. 1860, chap. 259.) The act declared "that from and after the first day of May, 1866, no person or persons shall, within the said Metropolitan Police District, exclusive of the county of Westchester, publicly keep or sell, give away or dispose of any strong or spirituous liquors, wines, ale or beer, in quantities less than five gallons at a time, unless he or they may be licensed pursuant to the provisions of this act, and may be permitted by it." (§ 3.) The Commissioners of the Metropolitan Board of Health were constituted and created a board of excise, and empowered "to grant licenses to any person or persons of good moral character, and who should be approved of by them, permitting him and them for one year from the time the same should be granted, to sell and dispose of at any one place within the said Metropolitan Police District, exclusive of the county of Westchester, strong and spirituous liquors, wines, ale and beer, in quantities less than five gallons at a time upon receiving a license fee, to be fixed in their discretion, and which should not be less than thirty, nor more than two hundred and fifty dollars." (§ 4.) Any person not licensed might keep, and in quantities not less than five gallons at a time, sell strong and spirituous liquors, wines, ale and beer, but not to be drank on the premises where sold. (§ 7.) The licenses granted were not to authorize, nor should any person or persons publicly keep or sell, give away or dispose of any strong or spirituous liquors, wines, ale or beer on Sunday ; or on any day upon which a general or special election or town meeting should be held within one-quarter of a mile from the place where the same should be held. (§ 8.) All persons were forbidden to

sell, give or dispose of any strong or spirituous liquors, wines, ale or beer to any apprentice or person under eighteen years of age, knowing or having reason to believe him to be such, without the consent, in the case of an apprentice, of his master or mistress, and in the case of a person under eighteen years of age, of his father, mother or guardian (§ 11); or to sell or to give to any habitual drunkard, or to any intoxicated person or persons then being under the influence of liquor (§ 12); nor should any person licensed, against the request of any wife, husband, parent or child, sell, give or dispose of any strong or spirituous liquors, wines, ale or beer, to the husband of any such wife, wife of any such husband, parent of any such child, or child of any such parent. (§ 13.) All persons licensed were required to keep their premises orderly and quiet, and between the hours of twelve o'clock at night and sunrise, and on Sunday, completely and effectually closed (§ 14); and were also required to give immediate notice to the sheriff, constable, officer or member of police, of all and every disturbance, disorder, or breach of the peace in the place licensed, and forthwith cause all persons to be removed therefrom, and the place to be closed, and kept closed until quiet was restored. (§ 10.) Every person violating any of the provisions of the act recited, should, for each offense, be guilty of a misdemeanor, and on conviction thereof, be punished by a fine, not less than thirty dollars, nor more than one hundred dollars, or with imprisonment for not less than ten days, nor more than thirty days, or by both such fine and imprisonment; and in addition thereto should be liable to a penalty of fifty dollars for each offense, recoverable in a civil action in the name of the Board of Excise, provided that any person or persons may so complain to the president of such board of any such offense; and the said board should pay to the person or persons so first complaining, if not members of the police department, one-half of the penalty so recovered. (§ 16.) There were further provisions declaring that a conviction for a violation of any of the provisions of the act by a person licensed, should forfeit and annul such license; and that a person trusting another

for liquor, on a sale thereof, in quantities less than five gallons, to be, or which should be drank or used in the building, or where sold, could not recover or compel payment therefor. (§§ 17, 18.) By the 19th section, it was made the duty of every sheriff, constable, policeman and officer of police to compel the observance, and to prevent the violation of the provisions of the act, if necessary, by summarily closing, and keeping closed, any places in which shall be violated any of such provisions; and the 20th section provided that "every sheriff, constable, officer or member of police shall forthwith arrest all persons who shall violate any of the provisions of this act, and carry such persons before any magistrate of the city or town in which the offense shall be committed, to be dealt with according to the provisions of the act. And it shall be the duty of ever magistrate to entertain complaints for a violation of any of the provisions of this act, made by any person under oath." The twenty-sixth, and concluding section, declared that "all acts and parts of acts inconsistent with the provisions hereof, are hereby repealed so far as the same shall apply to the said Metropolitan Police District, except the county of Westchester."

On the third and sixth days of May, and after the act took effect, the defendants, Barrie and Currier, without being licensed pursuant to its provisions, publicly sold, at their respective places of business in Broadway, in the city of New York, to various persons, strong and spirituous liquors, wines, ale and beer, in quantities less than five gallons at a time, to be and which liquors were drank on their premises; and the persons to whom such sales were severally made were not travelers, and were known to the defendants not to be travelers. Both the defendants had, in 1865, under the excise act of 1857 (Laws of 1857, ch. 628), received from the then commissioners of excise for the city and county of New York, a license to sell strong and spirituous liquors and wines, to be drank in their houses and on their premises, which licenses, by their terms, were to continue in force till fifty days after the third Tuesday in May, 1866, and at the time of the sales in question had not been revoked by order

of any court. The board of excise claimed to recover from these parties, respectively, the penalty of fifty dollars for a violation of the provisions of the act of April 14, 1866 ; and the questions submitted were : 1st. Were they liable to pay to the plaintiffs, by reason of such sales on the 3d and 6th of May, 1866, such penalty ? and, 2d. Is the act a valid and constitutional law ?

The relator Ketchum, on the 7th of July, 1866, at the city of Brooklyn, publicly sold and disposed of strong and spirituous liquors, without having obtained a license pursuant to the act of April 14, 1866. He was arrested upon a complaint charging him with the offense, and whilst in custody a writ of *habeas corpus* was sued out on his behalf, on the ground that he had been guilty of no offense, the act alleged to have been violated being unconstitutional and void. Upon a hearing the writ was discharged, and he was remanded into custody, the court holding that he had violated a valid and subsisting law.

The plaintiffs in the other submitted cases were parties selling strong and spirituous liquors, wine, ale and beer, at their places in Third avenue and Broadway, in the city of New York, in quantities less than five gallons at a time, without license. The board of excise, under the act of April, 1866, the commissioners of the Metropolitan police, and the superintendent of police, were impleaded as defendants. Upon the allegations of fact, that the commissioners and superintendent of police give out and claim that they will compel the observance of the act of April, 1866, and will arrest and cause to be arrested the plaintiffs, in accordance with the provisions of the nineteeth and twentieth sections of such act, in case they should violate it, and that the board of excise threaten to bring an action against them as often as they shall violate it, the plaintiffs asked that the defendants, and each of them, be restrained and enjoined from arresting them, or causing them to be arrested, for any violation of said act, and from in any way enforcing against them its provisions, and especially the provisions of the nineteeth and twentieth sections, claiming that such act, and especially those

sections, were unconstitutional and void. It was adjudged that the act was constitutional and valid; and that the plaintiffs were not entitled to an injunction against the defendants.

These appeals challenge legislative authority exercised since the origin of the government. At no time in the history of the State have we been without excise laws, nor has the authority of the legislature to control, regulate and prohibit the sale of spirituous and intoxicating liquors been questioned. The statute that the appellants have violated, and which they claim to conflict with the Constitution, is a more liberal excise law than that which it supersedes, and which now prevails in the State, outside of the Metropolitan Police District, or any general law since the organization of the government, as a part of its police system, regulating, restraining and prohibiting the traffic in intoxicating drinks. This will appear by reference to the course of legislation on a subject of so great public concern. The policy inaugurated at a very early period was to prohibit sales of intoxicating liquor in small quantities, except by license, to prescribe the persons to whom licenses might be granted, and to direct where and how the traffic should be conducted. In 1801 (not going back to an earlier period) a law was enacted providing for commissioners of excise in the towns, and one in the city of New York, to grant licenses annually to persons of good moral character to sell intoxicating liquors. No person could obtain a license to sell by the drink unless he kept a tavern, and had certain accommodations for the traveling public, and also entered into a recognizance not to keep a disorderly house, &c. Grocers and others having license could not sell any liquor to be drank on their premises. It was forbidden to sell liquor to any apprentice or slave. The penalty for each violation of the law was $25, and all violations were declared to be misdemeanors, punishable by fine and imprisonment, or either of them, in the discretion of the court before which any conviction should be had. (1 R. Laws, 176.) The same policy was continued by the general excise act of 1830. No person could sell any

strong or spirituous liquors or wines in any quantity less than five gallons at a time, without license; and no license could be obtained without giving a bond, with sureties to keep an orderly house. Licenses were forbidden to be granted to any person to sell intoxicating liquors to be drank in the house of the seller, unless such person proposed to keep an inn or tavern, was of good moral character, and had the necessary accommodations to entertain travelers. A tavern keeper could only sell liquor to be drank in his house, or upon his premises; and a grocer, under his license, could only sell to persons to carry away. Each violation of the law was visited with a penalty. It was also made a misdemeanor to sell liquor in any quantity less than five gallons at a time without a license, punishable by fine and imprisonment. (1 R. S., 677.) Licenses, it is true, under the Revised Statutes, in the city of New York, were granted by the city authorities, but persons who sold without having the proper license were liable to the penalties, and to be indicted and punished as prescribed by the general laws of the State. In 1857, an excise law was enacted superseding that of the Revised Statutes. (Laws of 1857, chap. 628.) The act provided for a board of excise in each of the counties of the State, and empowered such boards to grant licenses to tavern or hotel keepers, to sell strong and spirituous liquors and wines to be drank in their houses; and to storekeepers to sell such liquors and wines, in quantities less than five gallons, but not to be drank on their premises. The fee for licenses was to be, in towns and villages, not less than $30 nor more than $100; and in cities not less than $30, nor more than $250; and when issued were to be in force, unless revoked, until ten days after the third Tuesday in May next succeeding the granting of the same, and in the city of New York until fifty days thereafter. License was not to be granted to any person to sell strong and spirituous liquors and wines to be drank on the premises of the person licensed, unless he proposed to keep a hotel or tavern, was of good moral character, and had the necessary accommodations to entertain travelers; and not then, except on the petition of not less than twenty

freeholders residing in the election district where such hotel or tavern was proposed to be kept. The applicant was also required to give a bond, with sureties, not to keep a disorderly house. Inn or hotel keepers trusting other than lodgers in their houses, for any sort of strong or spirituous liquors or wines, could not recover for the same by suit. Licenses granted to storekeepers and others to sell liquor in quantities less than five gallons, were not to be deemed to authorize the sale thereof to be drank on the premises of the person receiving such license; and to entitle the applicant to that kind of license, he was to be a person of good moral character, and he was also required to execute a bond, with sureties, conditioned not to keep a disorderly house, or to sell or suffer to be sold any strong or spirituous liquors or wines to be drank on his premises. Persons selling any strong or spirituous liquors or wines in quantities less than five gallons at a time, without having a license therefor, granted as provided in the act, forfeited fifty dollars for each offense; and whoever sold or suffered or permitted to be sold, under his direction or authority, strong or spirituous liquors or wines, to be drank on his premises without having obtained a license therefor as a tavern or hotel keeper, was for each offense liable to the same penalty. Licensed persons were prohibited from selling or giving away any intoxicating liquors on Sunday, or on election day, within a quarter of a mile of the polls, to any person whatever, as a beverage, or from selling or giving liquor to any Indian or apprentice, or minor under the age of eighteen years, without the consent, in the case of an apprentice, of his master or mistress, and in that of the minor of his father or mother or guardian. So, also, it was made an offense to sell or give away liquor to any intoxicated person, or to sell to an habitual drunkard. The duty was enjoined upon every sheriff, constable, policeman or officer of police, to arrest all persons found actually engaged in the commission of any offense in violation of the act, and forthwith carry such person before any magistrate of the city or town in which the offense was committed, to be dealt with according to its provisions; and such magis-

trate was required to entertain any complaint of its violation, made by any person under oath.   The penalties imposed by the act (except in the case of sales to apprentices, minors and habitual drunkards) were to be sued for and recovered in the name of the Board of Commissioners of Excise; and it was provided, that in case the parties or persons whose duty it was by its provisions to prosecute, should neglect to prosecute for any penalty for ten days after complaint to them of any violation, accompanied with reasonable proof of the same, any other person might prosecute therefor in the name of the board of excise.   This law for restricting and regulating the retail traffic in intoxicating liquors is now in force in all parts of the State, except in the Metropolitan Police District, and was in that division of it up to April last.   By it, it is seen, that sales of intoxicating liquors in any quantity less than five gallons at a time, except by license, is prohibited; that no one but a hotel or tavern keeper can obtain a license to sell intoxicating liquor to be drank in his house or upon his premises; and *he* cannot, except on a petition signed by twenty freeholders; that a license is required to sell liquor in any quantity less than five gallons to be drank off the premises of the seller; and both classes of licensed persons are prohibited from selling or giving away as a beverage to any person whatever, any liquor on Sunday or on election day, within one-quarter of a mile of the polls of the election.   The legislation now assailed materially modifies the stringency of this enactment.   In the Metropolitan Police District, exclusive of the county of Westchester, the granting of licenses to sell intoxicating liquors to be drank on the premises of the seller, is not now restricted to hotel or tavern keepers, petitioned for by twenty freeholders; nor is that class of persons restrained from selling to be carried away; but any reputable person, on his own petition, can procure a license to sell strong or spirituous liquors, wines, ale or beer, to be drank on or off his premises, by paying a fee of not less than $30, nor more than $250.   In brief, any reputable person, having license, may engage in the retail traffic, selling by the drink or measure under five gallons; and the

regulations as to the days on which, and the persons to whom, sales may be made are no more stringent than those contained in the statute applicable to other parts of the State.

There is, then, really but one question involved in the present appeals, viz. : the right of the legislature to control and regulate the traffic in intoxicating liquors. The act assailed is simply regulatory of the retail traffic, and less rigorous as a scheme of regulation, than any in force, within the limits of the State for more than half a century. The right to legislate on a subject so deeply affecting the public welfare and security has not heretofore been questioned or denied ; and it could not well be, for it would have been to deny the powers of government inherent in every sovereignty to the extent of its dominions. A State is not sovereign without the power to regulate all its internal commerce as well as police. The legislature exercises and wields these sovereign police powers, as it deems the public good to require. It is a bold assertion, at this day, that there is anything in the State or United States Constitutions conflicting with or setting bounds upon the legislative discretion or action in directing how, when and where a trade shall be conducted in articles intimately connected with the public morals, or public safety, or public prosperity; or, indeed, to prohibit and suppress such traffic altogether, if deemed essential to effect those great ends of good government. And this power of a State to control and regulate its internal commerce and police is, in fact, the only point involved in the cases under consideration.

The legislature is the depositary of the sovereign power of the people, and in exercising it to subserve the public good, prohibits the sale of intoxicating liquors in small quantities, except by license; subjecting all offenders to forfeitures and criminal punishment. At the same time provision is made for licensing or permitting persons to carry on the retail trade under certain regulations. Without license, and in defiance of the law, the traffic is carried on, and those engaged in it claim to be guiltless of any offense, because the statute is void. Why void ? It is within the scope of legislative power, for

that is general and unlimited, and extends to all subjects of legislation, except in those particulars wherein it is expressly restrained by the Constitution. A law prohibiting the indiscriminate traffic in intoxicating liquors, and placing the trade under public regulation to prevent abuse in their sale and use, violates no constitutional restraints. Is it not an absurd proposition, that such a law, by its own mere force, deprives any person of his liberty or property, within the meaning of the Constitution, or that it infringes upon either of these secured private rights?

. Yet this is the only ground its violators can occupy to raise any question as to its validity. They are restrained of no *liberty* except that of violating the law by engaging in a forbidden traffic; and the assumption is not even plausible, that the act works a *deprivation* of property to any one, within the meaning of the constitutional restrictions upon legislative authority. It, in terms, it is true, revokes licenses granted under the act of 1857, but that is no encroachment upon any right secured ·to the citizen as inviolable by the fundamental law. These licenses to sell liquors are not contracts between the State and the persons licensed, giving the latter vested rights, protected on general principles and by the Constitution of the United States against subsequent legislation; nor are they property in any legal or constitutional sense. They have neither the qualities of a contract or of property, but are merely temporary permits to do what otherwise would be an offense against a general law. They form a portion of the internal police system of the State; are issued in the exercise of its police powers, and are subject to the direction of the State government, which may modify, revoke or continue them, as it may deem fit. If the act of 1857 had declared that licenses under it should be irrevocable (which it does not, but by its very terms they are revocable), the legislatures of subsequent years would not have been bound by the declaration. The necessary powers of the legislature over all subjects of internal police being a part of the general grant of legislative power given by the Constitution, cannot be sold, given away or relinquished.

Irrevocable grants of property and franchises may be made, if they do not impair the supreme authority to make laws for the right government of the State; but no one legislature can curtail the power of its successors to make such laws as they may deem proper in matters of police. (*Alger* v. *Weston*, 14 Johns., 231; *People* v. *Morris*, 13 Wend., 329; *State* v. *Holmes*, 38 New Hamp., 225; *Calder* v. *Kirby*, 5 Gray, 597; *Hun* v. *State*, 1 Ohio, 15; *Wynehamer* v. *The People*, 3 Kern., 378; *License Cases*, 5 How. U. S. R., 504; *Butler* v. *Pennsylvania*, 10 How., 416; *Coates* v. *The Mayor*, 7 Cow., 585; 2 Parsons on Contracts, 538; 3 id. 5th ed., 556.)

It is a groundless pretext, therefore, that the act in question conflicts with any provision of the Constitution of the United States, or of this State. It falls within the legislative power, exerted not for the first time, but unremittedly since the origin of the government. No one, heretofore, has questioned, on constitutional grounds, the validity of such an enactment, or called upon the judiciary to declare it void, and, perhaps, would not at this time, except as emboldened by the inconsiderate *dicta* of some of the judges in the case of *Wynehamer* v. *The People*, 3 Kern., 378. If there be no constitutional objection, the rule fully obtains here " that the will of the legislature is the supreme law of the land, and demands perfect obedience." Men are not to violate legislative enactments, and expect from courts immunity and protection instead of punishment. Judicial interposition to vacate or nullify legislative action (unless an infringement of some rule of the Constitution, or an invasion of private rights plainly expressed therein, and intended to be inviolable) would be " to set the judicial power above the legislative, which would be subversive of all government." It is the exercise of a judicial function, of the most delicate nature, to declare an act of the legislature void, and it is not to be expected that courts will assume it unless the case be plainly and clearly in derogation of constitutional limitations; nor is it to be expected that they will be zealous or astute to find grounds to thwart or defeat the legislative will,

or resort to subtle or strained constructions to bring a statute into conflict with the organic law. But it is to be expected that they will presume in favor of the constitutionality of a statute, giving a liberal construction to uphold it, and refrain from declaring legislative action void, unless such a conclusion cannot be avoided. Errors or mistakes in legislation are not to be referred to the judiciary for correction, or its aid invoked, by men chafing under the restraints of particular statutes, to nullify the legislative power.

The judgments should be affirmed.

Judgments affirmed.