Johnson *v.* State.

3L 469
e110 508

## J. B. JOHNSON *v.* THE STATE.

CRIMINAL LAW. *Tippling. Incorporated institutions of learning. Repeal of the charter of a town. Effect on license granted.* The charter of the town of Hartsville was repealed. There was in the town an incorporated institution of learning. The defendant, a few days before the repeal, procured license to tipple for twelve months, and had his saloon in Hartsville. Upon the repeal of the charter he was indicted for tippling within four miles of an incorporated institution of learning, not within an incorporated town. Held, he was liable to conviction, notwithstanding his license had not expired. The grant of the privilege to tipple, which might be exercised within an incorporated town, irrespective of its proximity to incorporated institutions of learning, does not include the right to do so upon the repeal of the charter of the town, nor preclude the Legislature from repealing the charter of the town, or change the results of such repeal.

### FROM TROUSDALE.

Appeal in error from the Circuit Court of Trousdale county. W. N. McCONNELL, J.

J. J. TURNER for Johnson.

ATTORNEY-GENERAL LEA for the State.

FREEMAN, J., delivered the opinion of the court.

The defendant was presented by the grand jury of Trousdale county for unlawfully selling and tippling intoxicating liquors on the first of May, 1879, within four miles of an incorporated institution of learning in the town of Hartsville, in said county, the said selling not being within an incorporated town. He was found guilty under the instructions given to the jury by the court, and has appealed in error to this court for a reversal of the judgment.

The statute under which the party was convicted is highly penal in its provisions, the jury fixing the defendant's fine at one hundred dollars, and imprisonment in the county jail for one month. The case, as. presented in the agreed facts, is as follows:

The defendant had been in this business for a number of years in the town of Hartsville, obtaining license from the county court clerk, as required by law, taking his license uniformly for the term of three months. On the 11th day of March, 1879, the firm of which defendant is a member took out a license for twelve months, which was duly and legally issued to them upon payment of one hundred and fifty dollars, State and county tax for the privilege thus granted. It may be remarked here that the terms of the license granted are "to keep a tippling house at any one place in Trousdale county" for the period specified. Bond and security was also required by law in the sum of five hundred dollars, that the parties are

to keep an orderly house, and in all things conform to the requirements of the statute under which the license was granted, which is an act "to tax and regulate tippling and tippling houses, and to increase the revenue."

At the date of the issuance of the above license, the town of Hartsville was an incorporated town, and had been since 1858.    The institution of learning situated in or near said town had been incorporated in 1856.    The charter of the town of Hartsville was repealed March 28, 1879, and the inhabitants permitted, if they choose, to accept the benefits of the "taxing district" system inaugurated by the last Legislature, but the agreed case shows they have not done so.

By the act of Assembly of March 20, 1877, it was made a misdemeanor to sell or tipple spiritous liquors within four miles of an incorporated institution of learning in this State, under penalty of not less than one hundred nor more than two hundred and fifty dollars, and imprisonment not less one nor more than six months.    But the second section of this act. excepted from its application the sale of such liquors within the limits of any incorporated town, and also to sales made by persons having license to make the same at the passage of said act, during the time for which such license was granted.    It has been urged that we should hold the exception in the above statute in favor of existing rights under licenses granted, and should protect the defendant in this case.    But the language of the act is definite, that only such licenses as were owned by persons at the

date of that act, to-wit., March. 19, 1879, are excepted. The case then is that there has been a sale of spirituous liquors within four miles of an incorporated institution of learning not within an incorporated town. Nothing more appearing the party is clearly guilty under the act of 1877, under which he was convicted. He defends, however, under the license issued and paid for March 11, 1879, authorizing him to tipple in consideration of one hundred and fifty dollars, State and county tax, paid to the State, under a law of the State authorizing such license. The terms of this license, as we have said, are that the party is authorized to "keep a tippling house at any one place in Trousdale county" for twelve months from the date of its issuance. It is claimed that this license gives immunity for twelve months to keep a tippling house in the town of Hartsville, it being the place of business of the parties at the time, and being lawful to do so at the time, because the town was then an incorporated town, and liquor might be sold within its limits, notwithstanding the proximity of an incorporated institution of learning; that the license is a contract to be allowed to sell for the twelve months, the obligation of which cannot be impaired, and that the repeal of the charter exposing the parties to the penalties was such an impairment, if they are now held subject to the penalties of the statute.

We do not deem it necessary to give a definite decision of the question whether such license is a contract protected by the immunities in favor of the right

thus secured under the Constitution of the United
States and of our own State.   The terms of the li-
cense and the grant of the privilege are expressed in
very general terms, it is true, and if literally construed,
might be held to include the right to sell anywhere
within the limits of the county, subject to no restric-
tion, control or regulation.   But this would not be
a fair construction of what was intended, even assum-
ing it to be a contract in the fullest sense of the
term.   We take it that the fair meaning is that the
party is to enjoy the exercise of the privilege granted,
subject to such reasonable police regulations as may be
deemed necessary for the protection of the community.
That it shall be held and enjoyed in the same way
as other rights secured by the Constitution and laws
of our State.   For instance, a man has the right to
own a horse, it is his property, and he may use him,
in a reasonable way, as he pleases, but not to the
detriment of his neighbors' rights, nor the disturbance
of the community, as by riding into a public assem-
bly, or taking him into a church.   He can ride his
horse as rapidly as he chooses, as a general rule, but,
as we have held, he cannot run him along a public
road at the peril of doing an injury to other persons
equally entitled to the use of the highway with him-
self.   So under this license the party would tipple,
but not on election days, nor within a mile of a re-
ligious meeting, and the like restrictions found in our
statute book.

In view of the importance of the police powers to
the well being of the State, it ought not to be held

that its reasonable exercise for the regulation of the enjoyment of even well defined rights, is in any way an infringement on the rights of any member of the community, except where the violation of that right is clear and unmistakable. In this view of the question we hold that while the party here may be conceded to have the privilege to tipple in the county of Trousdale for the period of twelve months, the regulation that he shall not do so within four miles of an incorporated institution of learning is but a reasonable regulation, and one to which his right may be well subjected without impairing in any fair legal sense the enjoyment of the privilege granted. In other words, that he takes the privilege, and may enjoy it, subject to the paramount right of the State to protect the community from evils incident to its exercise. He may well enjoy the privilege of tippling in the county of Trousdale, and at the same time the State may well provide for the protection of her youth from the baneful influences of his traffic while engaged in the acquisition of an education, in many cases away from home and the watchful oversight of parents and guardians. This does not abrogate his license, but leaves it in full force—only regulates its exercise for the general good. It could not be maintained in any aspect of the question that the grant of the privilege to tipple, which might at the time be exercised within incorporated towns, irrespective of their proximity to institutions of learning, necessarily included the right to do so should the town cease to be incorporated, nor could it be held that the Legislature was precluded

from repealing the charter of incorporation of any town, or if it did do so that all the results of such. a repeal should not follow in order to the protection of parties in the exercise of the right to tipple under a license.    The right granted may be exercised with ample freedom in this case in the county of Trousdale without the violation of any law by simply engaging in the business within an incorporated town, or farther than four miles from an incorporated institution of learning.    For these reasons we hold the view of his Honor, the circuit judge, correct, and that the conviction of the party was properly had, independent of the question whether his licensed privilege be a contract or not.

On that question we find the decision of our courts. conflicting, and not very satisfactory, to say the least of them.    In New York and Massachusetts it has. been held that a license granted has not the elements of a contract and protected as such, while in New Hampshire, Alabama and New Jersey the contrary has been held.    *Metropolitan Board of Exercise* v. *John Barrie et als.*, 34 N. Y., 657; *Calder* v. *Kirby*, 5 Gray, 597; *Commonwealth* v. *Brennan*, 103 Mass., 70; *Adams* v. *Hackett*, 7 Fost., 289; *State* v. *Phalen*, 3 Harr., 441; *Boyd* v. *The State*, 46 Ala., 329.

On this question we express no opinion, deeming the view we have taken conclusive of the case and satisfactory.    It will be time enough to decide the question of contract when it is fairly presented.

Let the judgment be affirmed.

Upon a petition to rehear, FREEMAN, J., said:

A respectful petition for rehearing is presented in this case, presenting several questions not urged in the former argument of the case, which we proceed to dispose of.

First, a slight error of fact is pointed out, the opinion saying the agreed case showed that Hartsville had not accepted the benefits provided by the taxing district system. We correct that by saying the agreed case does not show that Hartsville has accepted the benefits of such an organization.

It is now urged that we must assume the fact to be that Hartsville is a taxing district by virtue of sec. 1, ch. 11 of the bill to establish taxing districts. That section is, "that the several communities embraced in the territorial limits of all such municipal corporations in this State as have had or may have their charters abolished, or may surrender the same under the provisions of this act, are hereby created taxing districts, in order to provide for local government," etc.

Several difficulties are in the way of this view. First, it is expressly provided by the act repealing the charter that the inhabitants shall be entitled to the benefits of a "taxing district, should the citizens thereof see proper to avail themselves of such benefit." It is assumed by the Legislature to be optional with the town to do so, and in fact is so enacted. We cannot presume that choice has been made in favor of a taxing district system. It is a question of fact,

and would have to be shown. The repealing act settles this.

Another question, however, is now for the first time presented, but which is fairly raised by the. facts of the agreed case. It is, that the act repealing the charter of the town of Hartsville did not take effect until forty days after its passage, under art. 2, sec. 20 of the Constitution of 1870. The act was passed March 28, 1879, and approved by the Governor on the 31st. The whisky in this case is charged to have been sold on the first day of May, 1879, consequently in less than forty days after the passage of the law. The concluding clause of the statute is, "that this act shall take effect from and after its passage." The clause of the Constitution referred to is, "No law of a general nature shall take effect until forty days after its passage, unless the same or the caption shall state that the public welfare requires it should take effect sooner."

Now if this was a general law, in the sense of the Constitution, it would be clear the law could not take effect till forty days after its passage. But then a law repealing the charter of a village is not a general law, one equally operative in every part of the State, or upon all individuals who may bring themselves within its provisions. No town in the State could be effected by this repeal except the town of Hartsville, nor was intended to be. It is as special as a law can be, operating upon only one single village of the State. It, therefore, is not included in this provision of the Constitution—and the objection

fails.    As to the objection that it does not appear that the institution of learning was organized under the law, etc., we need but say that the fact of its existence is found by the jury, and is assumed by the whole facts of the case.    We do not think this question is now properly presented, nor the objection sustainable if it could be done.

As to whether the presentment was found on information of a member of the grand jury we need not determine, as the question should have been raised by a plea in abatement.    On the whole case we see nothing in the objections now presented, and dismiss the petition.