PEOPLE *ex rel.* OAK HILL CEMETERY ASS'N *v.* PRATT *et al.*, Assessors.

(*Supreme Court, Special Term, Monroe County.* January 26, 1891.)

1. CONSTITUTIONAL LAW—POLICE POWER—REGULATION OF CEMETERIES.
   Relator, a cemetery association, was incorporated on March 16, 1889, at which time an ordinance of the city of R. prohibited interments within the city, except in certain designated cemeteries. On March 19th an ordinance was passed permitting interments in relator's cemetery, whereupon relator purchased the land intended to be so used within the city. Afterwards, and before any interments had been made therein, the ordinance permitting such interments was repealed. *Held,* that such repealing ordinance was a valid exercise of police power by the city, and did not deprive relator of any vested right.

2. TAXATION—EXEMPTION—CEMETERY PROPERTY.
   Where a cemetery association is authorized by a city ordinance to make interments in land acquired by it within the city, but before any interments are made therein the ordinance is repealed, and such use of the land of the association within the city is prohibited, by the city council, such land ceases to be cemetery property within Laws N. Y. 1847, c. 133, § 10, as amended by Laws 1877, c. 31, exempting such property from taxation.

3. CEMETERIES—ACQUIRING LAND—NOTICE.
   Where a cemetery association, seeking to acquire lands for burial purposes, fails to publish a notice of its intention to apply to the county board of supervisors for its consent to hold and use land for such purposes, as required by Laws N. Y. 1847, c. 133, it cannot hold or use as a cemetery land acquired by it.

4. SAME—POWER OF SUPERVISORS.
    Laws N. Y. 1847, c. 133, (the rural cemetery act,) authorizing a cemetery association to acquire land for the purposes of a cemetery with the consent of the county board of supervisors, does not authorize the supervisors to locate a cemetery within an incorporated city, etc.

*Certiorari* by the Oak Hill Cemetery Association to Luther A. Pratt, Michael J. Maher, and Jacob Gerling, assessors of the city of Rochester, to review an assessment. Relator was organized March 16, 1889. Prior to that time an ordinance had been in force in the city of Rochester prohibiting interments excepting in certain cemeteries. On March 19, 1889, this ordinance was amended, permitting interments to be made in Oak Hill cemetery, as well as and in other cemeteries. On March 22, 1889, relator acquired title to the property sought to be taxed by the assessors, and which assessment the relator is contesting. On March 28, 1889, the common council reconsidered said ordinance, and prohibited interments in Oak Hill cemetery under the penalty of $20, leaving the penal ordinance regulating the burial of the dead as it existed prior to the incorporation of the relator. The assessors assessed the property in 1888, then held by the grantors of the relator, at $40,000. In 1889 they did not assess the property. In 1890 the property was assessed at $80,000, and, after allegation made in behalf of relator, the assessment was reduced to $75,000. It was contended on behalf of relator that its property, being cemetery property, is exempt from all public taxes, rates, and assessments, under chapter 133 of the Laws of 1847, as amended. It was contended further on the part of relator in this proceeding that, if its lands should be declared subject to assessment, the assessment as made by the assessors was illegal, excessive, and unequal. The respondents contended that the lands could not be used for cemetery purposes, inasmuch as the common council had refused its consent to interments in this cemetery, and consequently its lands were not cemetery lands; and they contended further that the assessment as made at $75,000 was a just and proper assessment.

    *H. F. Remington* and *Martin W. Cooke*, for relator. *H. J. Sullivan*, First Asst. City Atty., and *J. Breck Perkins*, for respondents, assessors of city of Rochester.

    DAVY, J. This is a proceeding instituted by the Oak Hill Cemetery Association under chapter 269 of the Laws of 1880, entitled "An act to provide for the review and correction of illegal, erroneous, or unequal assessments." The relator alleges in the petition that it is the owner of $45\frac{1}{2}$ acres of land, which is located in the Sixteenth ward of the city of Rochester, and it asks that the assessment thereon for the year 1890 be stricken from the assessment roll, for the reason that the land is exempt from taxation because the society intends to use it for cemetery purposes. It also appears from the petition and the answer thereto that Oak Hill Cemetery Association was organized under the rural cemetery act, (chapter 133, Laws 1847,) and the several acts amendatory thereof and supplementary thereto, and that on the 19th day of March, 1890, the common council of the city of Rochester passed an ordinance permitting the burial of dead bodies in said cemetery, which ordinance was repealed on the 28th of March of said year. The learned counsel for the relator contends that the association was legally organized, and that the common council, after passing the ordinance, had no legal right to repeal it without the consent of the association. The municipal corporation of the city of Rochester was created by an act of the legislature which invested it with subordinate legislative powers to be exercised for the public good. The power authorizing the municipal council to pass and repeal the ordinance in question was derived from the city charter, which expressly provides that the common council may pass and repeal ordinances pertaining to the burial of the dead whenever it shall deem it proper. Many of the powers exercised by the

municipalities fall within what is known as the police power of the state, and are delegated to them to be exercised for the public good. In the case of *Bertholf* v. *O'Reilly*, 74 N. Y. 522, ANDREWS, J., said "that under the police power of the state persons and property are subject to all kinds of restraint and burden in order to secure the general comfort, health, and prosperity of the people." It cannot be claimed that the act repealing the ordinance was unconstitutional, or that it impaired the obligation of a contract. It may be said that no repeal of an existing ordinance can operate to destroy rights of property after they become vested by virtue of its provisions, but these rights, however, are subject to police regulations. No person can legally claim that his vested interests are exempt from a proper police regulation because such interests were derived from the municipal corporation. Dill. Mun. Corp. (4th Ed.) § 142. In this case there were no vested rights affected by the repeal of the ordinance; the real estate was purchased by the association from individuals, and not from the city. No human remains had been buried in the cemetery, no lots had been sold, no improvements made or money expended, upon the strength of the passage of the ordinance. The ordinance permitting dead bodies to be buried in Oak Hill cemetery created a mere license, and was revocable at any time, in the discretion of the common council. It was a temporary permit to do what would be otherwise unlawful. Licenses, being mere grants of privileges issued in the exercise of the police power, do not create contracts between the corporation and individuals who receive them. They are revocable at any time, in the discretion of the municipal authorities. *Board* v. *Barrie*, 34 N. Y. 657. When the association accepted the license it took it subject to its being canceled by a repeal of the ordinances at the pleasure of the municipal council, and the association cannot now be heard to say that the common council had no power to exercise that authority unless consented to by the association. Reverence and respect for the dead demand that they should be suitably and properly interred, but it should be done in a manner and in a locality not offensive to the living. The public health, happiness, and comfort of the living must be considered in making regulations for the burial of the dead. The evils resulting from its neglect, especially in a densely populated city like Rochester, might prove injurious to the public health, and impede the growth and prosperity of the city. The public interests, therefore, demand that a wide discretionary power in such matters should be vested in the common council. Its members, who are chosen from every ward in the city, are in the best possible position to understand the wants of the people, and to know how the location of a cemetery within the city limits would affect its industries, its growth, and the health of the people. Were the common council to be bound down by severe rules, and not permitted to exercise its discretion in legislating for the municipality, it would be little more than a ministerial body, and its legislative acts in most cases would prove ineffectual. All legislation, to be effectual, must be based upon the untrammeled discretion of the law-making power. The very object and purpose of a municipal organization and local legislation would be defeated did not the courts recognize the full extent of this discretion. No legislative body has a right to so part with its legislative powers as not to be able to exercise them as often as the public interest requires. Cooley, in his work on Constitutional Limitations, *206, says that such a body has no power, even by contract, to control or embarrass its legislative powers and duties; that citizens have no vested rights in the existing general laws of the state which can preclude their repeal. In 1813 the legislature of this state gave to the city of New York power to pass ordinances regulating, and, if necessary, preventing, the interment of dead bodies within the city limits. In 1823 an ordinance was adopted by the city council forbidding interments or depositing of dead bodies in vaults in the city south of a designated line. A penalty was prescribed for its violation. An action was brought to recover the pen-

alty for depositing a dead body in a vault of Trinity church. A plea was interposed that the land was granted by the king of Great Britain to the church corporation for a church-yard and a burial-place. The validity of the ordinance was sustained. The court held in that case (*Coates* v. *Mayor, etc.*, 7 Cow. 585) that the act under which the ordinance was passed was not unconstitutional, either as impairing the obligation of contracts or taking property for public use without compensation, but stood on the police power to make regulations in respect to nuisances; that the state had the unquestionable right to regulate the use of all property for the public good. *Presbyterian Church* v. *New York City*, 5 Cow. 538; *Kincaid's Appeal*, 66 Pa. St. 423; *City Council* v. *Baptist Church*, 4 Strob. 306; Dill. Mun. Corp. (4th Ed.) § 392.

There is another reason why the relator's property can not be used for cemetery purposes, and is, therefore, not exempt from taxation. The society claims to have been organized under the rural cemetery act, which provides that any rural cemetery incorporation desiring to use any lands for cemetery purposes, or to take conveyance thereof, shall cause notice to be published once a week for six weeks in two newspapers published in the county, and having the greatest circulation in the county in which such lands are situated, of their intention to apply to the board of supervisors of such county for consent to hold and use the lands for cemetery purposes; the notice required, to contain a brief description of the land for which consent is asked, and also its location and the number of acres. At such meeting the applicants and remonstrants, if any, may be heard in person and by counsel, and thereupon, if such board shall grant such consent, it shall be lawful for such incorporation to take and hold the lands designated in such consent, not exceeding 250 acres in any county. 3 Rev. St. (Banks, 8th Ed.) page 1930, § 4. The society did not comply with the provisions of said act in advertising or procuring the consent of the board of supervisors. The association, therefore, has no legal right to hold or use the lands in question for cemetery purposes, and, even if the board had given its consent, I am of the opinion that the rural cemetery act does not clothe the board of supervisors of the county of Monroe with power to locate a cemetery within the corporate limits of the city of Rochester. The act only applies to rural cemeteries, and not to cemeteries within the corporate limits of cities. The legislature never intended to ignore the municipal authorities in such matters, and to give the board of supervisors the exclusive right to locate cemeteries in cities. The power to locate cemeteries in the city of Rochester is vested in the municipality, where it properly belongs, and not in the board of supervisors.

The next point to be considered is whether the assessment is erroneous by reason of overvaluation, or unequal on the ground that the assessment has been made at a higher proportionate valuation than other real estate in that section of the city where the property in question is located. The learned referee to whom that question was referred is of the opinion that the assessment of $75,000 upon the relator's real estate for the year 1890 was erroneous, unequal, and unjust, and that it should be reduced to $52,000. From a careful examination of the testimony taken before the referee I am unable to discover any substantial reason why his report should not be adopted. The relator therefore may have judgment reducing the assessment for the year 1890 to $52,000. No costs are allowed.