KEILKOPF, APPELLANT, v. CITY OF DENVER, APPELLEE.

1. CONTROL OF LIQUOR TRAFFIC.

The general rule is that a state legislature has authority to regulate, control and restrain the traffic in intoxicating liquors within its own borders; such authority belongs to the police power of the state, and may, subject to constitutional restrictions, be delegated to the local legislative bodies of municipal corporations.

2. SAME—BY CITY ORDINANCE.

By the Denver charter the city council is authorized by ordinance to license, or to prohibit and suppress dram shops; under such grant of authority an ordinance, prescribing a fine not exceeding $200 for the keeping of a dram shop within the city limits without a license, is valid.

3. RENEWAL OF LICENSE.

An application for the renewal of a license accompanied by a deposit of the license fee, but without procuring the license, is no defense to the charge of keeping a dram shop without a license, especially where the renewal is grantable only in the discretion of the city council.

*Appeal from the County Court of Arapahoe County.*

ACTION for violation of city ordinance. Defendant, having been adjudged to pay a fine of $105 and costs, brings his appeal to this court.

FROM CHARTER OF CITY OF DENVER.

" The city council shall have power by ordinance:

\*      \*      \*      \*      \*      \*      \*      \*

" *Twelfth.* (Exclusively subject to the general law of the state, but not at a lower price than six hundred dollars, to keep open until twelve o'clock; nor lower than eight hundred dollars, to keep open until two o'clock; nor lower than one thousand dollars to keep open all night.) To license and tax tippling houses, dram shops, billiard tables and bowling alleys, and selling or giving away of any intoxicating or malt liquors by any person within the city, and to regulate the same; *Provided,* That no license shall be issued to keep any liquor saloon or dram shop, except on petition of the owners of a majority of the real estate within the frontage of

the block in which said business is to be carried on. When the person applying for such license has fully complied with the laws and ordinances applying thereto, the city council may order such license issued; *Provided, however,* That such license may be renewed from time to time, at the discretion of the city council, for a period not exceeding three years, without further petition. No license shall be issued for a saloon or dram shop located within five hundred feet of any church or school building; the measurement to be along the same street on which the church or school building fronts, and along the adjoining side streets in the case the license is sought for a dram shop or liquor saloon on such side street."

" *Thirteenth.* To prohibit and suppress dance houses, tippling houses, dram shops, opium joints, gaming, gambling houses, dealing in lottery tickets, prize fighting, cock fighting, dog fighting, bawdy houses, disorderly houses, houses of ill-fame or assignation, or any place or resort for the practice of lewdness or fornication, or notoriously reputed to be such, whether kept or frequented by one or more persons, and to destroy instruments of gambling." See Session Laws, 1889, p. 126, amending act of 1885, Session Laws, pp. 81, 82.

### FROM ORDINANCES OF CITY OF DENVER.

"Section 1. Whoever within the corporate limits of the city of Denver, not having a license to keep a dram shop or tippling house, shall, by himself or another, either as principal, agent, clerk or servant, directly or indirectly, sell or give away any intoxicating or malt liquors, whether the same be in bottles, jugs, glasses, or any other instrument or thing, to be drunk upon the premises, or in any adjacent room, building, yard, premises or place of public resort, shall upon conviction be fined not less than ten nor more than two hundred dollars for each offense."

### AGREED FACTS IN THE CASE.

" It is agreed between the parties to the suit that the defendant was keeping a dram shop in the city of Denver, and

that he sold liquor which was consumed and which was sold for the purpose of being consumed, on the premises of this dram shop, on the fourteenth day of October, 1889, and that the liquors so sold were intoxicating and malt liquors.

" It is also admitted that the defendant is so operating and running this dram shop without a license of the city of Denver. · It is also admitted that said dram shop is within less than five hundred feet of a church, but across the street from a church, which was used for religious purposes at the time of the bringing of this suit, on the fourteenth day of October, 1889.

" It is also agreed that on the fourth day of October, 1889, the defendant made application and tendered the money to the city treasurer for a renewal of his saloon license, having received a license from the city council in 1882 upon the usual petition and bond; that in each subsequent year following the year 1882 he was granted a renewal of his license in periods of six months .each up to the fourth day of October, 1889; that on the twenty-first day of October, 1889, he deposited with the city treasurer of the city of Denver the sum of three hundred dollars for a renewal of his license for the period of six months, and received a receipt from the treasurer for that amount, but that the city treasurer refused to grant him a renewal of his license for the period of six months.                                              •

" It is also admitted that the defendant has made no application to or filed a petition of the owners of a majority of the real estate within the frontage of the block in which said business is carried on with the city council within three years for granting a license to run a dram shop at this number, at the place where this dram shop has been open and operated by the defendant since the year 1882. It is also admitted that this money is still in the hands of the treasurer and has never been returned to the defendant."

### ASSIGNMENTS OF ERROR.

" 1. The finding of the court below is contrary to the evi· dence.

" 2. The finding is contrary to law."

Mr. M. B. CARPENTER, for appellant.

Mr. JOHN F. SHAFROTH, Mr. G. W. WHITFORD and Mr. A. B. SEAMAN, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

1. The general rule is that a state legislature has authority to regulate, control and restrain the traffic in intoxicating liquors within its own borders. Such authority belongs to the police power of the state, and may, subject to constitutional restrictions, be delegated to the local legislative bodies of municipal corporations. The authority is to be exercised with the view to lessen drunkenness, pauperism and crime, conserve the public peace, protect life and property, and promote the general welfare of society. The extent to which such authority should be exercised, and whether it should be exercised by the enactment of general laws or by the adoption of local municipal ordinances, or both, are questions of legislative expediency with which judicial officers as such are not charged with responsibility in the first instance. But when the lawmaking power has adopted valid statutes or ordinances regulating or restraining the traffic in intoxicating liquors, the courts are bound to construe and enforce such laws in a fair and impartial manner. Such qualifications of the rule above stated as may result from the paramount authority of the State or National Constitution, need not be considered in the present case. Cooley Const. Lim. (6th ed) p. 716 and notes; 1 Dillon Mun. Corp. (4th ed.) § 141 and notes; *Metropolitan Board v. Barrie*, 34 N. Y. 657; *State v. Downer*, 21 Wis. 277; *Commonwealth v. Blackington*, 24 Pick. 352; *Mugler v. Kansas*, 123 U. S. 623; *Kidd v. Pearson*, 128 U. S. 1.

2. The ordinance which defendant was charged with violating was enacted in pursuance of specific and definite leg-

islative authority; no question is raised as to the legality of such delegated power; hence, the ordinance cannot be impeached as invalid on the ground that the courts may deem the same unreasonable or against sound policy. It is not as though the ordinance had been passed under a general grant of legislative authority. See Session Laws 1889, p. 126, amending paragraphs 12 and 13, sec. 20, art. 2, Denver charter of 1885; 1 Dillon Mun. Corp. § 328; *Phillips v. City of Denver, ante,* 179.

In behalf of defendant it is contended that inasmuch as the charter (paragraph 12) prohibits the issuing of licenses for any saloon or dram shop located within five hundred feet of any church or school building, the municipal authorities are deprived of all jurisdiction in respect to dram shops within such 500 foot limit, and that defendant is not amenable to the ordinance, because he kept his dram shop within 500 foot limit. This argument has the merit of novelty as well as ingenuity, but it ignores altogether another provision of the charter. By paragraph 13 the city council is authorized to prohibit and suppress tippling houses and dram shops. This provision is in no way qualified or complicated by the 500 foot limit; it applies to the whole city and every part thereof. It was therefore competent for the city council to provide by ordinance that any person keeping a dram shop or tippling house *anywhere* within the limits of the city, without a license, should be subject to the penalty imposed by the ordinance.

3. It appears that defendant had received a license for his dram shop in 1882, and that the same was renewed at intervals of six months up to October, 1889. It is now claimed that he was entitled to a renewal of his license for six months longer upon a deposit of $300 with the city treasurer. He made such deposit, but his application for a license was refused. Such application and deposit constituted no defense to the charge. He did not procure the license; but he did keep his dram shop open. A license *granted* might have constituted a defense; but a license *applied for, accompanied by*

*a deposit of the license fee,* was no defense. To hold other-
wise would violate not only the letter of the law, but would
ignore the authority and *discretion* of the city council alto-
gether in such matters.    *State v. Jamison,* 23 Mo. 330 ; *Kad-
gihn v. City of Bloomington,* 58 Ills. 229.

The record before us does not show the present case to be
one of peculiar hardship.   It does not appear that the city
treasurer has ever refused to return the $300 to defendant ;
nor does it appear that defendant was entitled to a renewal
of his license.   It is true paragraph 12, above cited, provides
that a license *may be renewed* from time to time, at the *dis-
cretion* of the city council, *for a period not exceeding three
years without further petition ;* but it does not provide that
such license *shall be renewed* for any period.   On the con-
trary, the renewal is expressly made a matter of *discretion*
with the council.   Besides, in this case, the three years had
elapsed more than twice over, and defendant had not pre-
sented the petition of any owners of real estate within the
frontage of the block in which his dram shop was carried on.

Furthermore, it is admitted that the dram shop was within
500 feet of a church used for religious purposes.   Consider-
ing the purpose and intent which the legislature must have
had for excluding dram shops for a distance of 500 feet from
churches and school buildings, there can be no doubt that the
500 foot limit applies to renewals as well as to original licenses.
The law does not provide that a license for a dram shop al-
ready issued shall become void in case a school building or
church shall be located within 500 feet of such dram shop ;
there is, therefore, no danger of a forfeiture of money already
paid and accepted.   But the law does declare that " no license
shall be *issued* for a saloon or dram shop located within 500
feet of any church or school building."   This clause of the
statute is inserted in such close connection with the provision
for the renewal of licenses that if it had been intended to ap-
ply to original applications only, it is not probable that such
unqualified negative words would have been employed.   It
would be a narrow construction to say that the language does

not include the renewal as well as the issuance of licenses. The renewal of a license is equivalent to the issuance of a license in legal as well as practical effect.

Perceiving no error in the record, the judgment of the county court must be affirmed.

*Affirmed.*