# FRANK SCHWUCHOW

### v.

# THE CITY OF CHICAGO.

1. INTOXICATING LIQUORS—*power to license, regulate, restrain or suppress—construed.* Where the legislature confers the power to suppress groceries where liquor is sold, or to regulate, license and restrain the same, it is a matter purely discretionary whether or not the city will wholly prohibit its sale, or license and regulate the traffic.

2. SAME—*right to forfeit license.* Where power is conferred on a city to prohibit entirely the sale of intoxicating liquors, or to regulate and license the same, at discretion, the city may grant the privilege of selling such liquors on such terms and conditions as it may see fit to impose, and has ample power to impose, as a condition, that a license granted shall be subject to revocation on the violation of any of the ordinances regulating the traffic.

3. SAME—*power to impose other restrictions and conditions.* In such a case, where absolute control over the whole subject of granting licenses is conferred, the city may impose any other conditions calculated to protect the community, preserve order and suppress vice, such as the closing of the grocery on election days, holidays or Sundays, or the closing of the same at a particular hour each evening, etc., and for a violation of any of these conditions provide for a forfeiture of the license. Such power grows out of the fact, that it is discretionary to prohibit the sale, or license it on such terms as the city may choose.

4. LICENSE—*assent to conditions by accepting.* Where a party applies for and accepts a license under an ordinance imposing conditions and restrictions, and the license itself contains a condition that it may be revoked at the discretion of the mayor, he thereby assents to the terms and conditions imposed, both in the license and the ordinance under which it is issued.

5. ORDINANCE—*distinction between restraints on liquor traffic, and in restraint of trade.* Restraints upon the traffic in spirituous liquors are not like such as restrict the ordinary avocations of life which advance

human happiness, or trade and commerce that neither produces immorality, suffering nor want. This business is, on principle, within the police power of the State, and restrictions which may rightfully be imposed on it might be obnoxious as an illegal restraint of trade, when applied to other pursuits.

6. REMEDY—*city not confined to suits for penalties or to suit on bond of licensed grocery keeper.* The power to enforce the observance of all rules, ordinances, by-laws, and police and other regulations of a city by penalties not exceeding $100 for any offense against the same, does not necessarily confine the city to that mode, nor to a suit upon the bond of a grocery keeper for violations by him, but the city, in the exercise of the police powers conferred, may provide for the revocation of his license.

7. POLICE REGULATIONS — *embraces control over liquor traffic.* The control of the liquor traffic being a police regulation, no one can acquire such a vested right in it by a license as that it may not be resumed when the interests of society require it.

APPEAL from the Criminal Court of Cook county; the Hon. WILLIAM A. PORTER, Judge, presiding.

Messrs. NISSEN & BARNUM, for the appellant.

Mr. I. N. STILES, and Mr. JOHN LEWIS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit, brought by the city, before a police magistrate, against appellant, to recover a penalty for selling liquor without a license. The city recovered, and a fine of $100 was imposed; the cause was removed to the criminal court of Cook county, by appeal; a trial was had in that court, a jury being waived, which resulted as it had before the police magistrate, and from which this appeal is prosecuted.

The facts are not disputed, and are, in substance: That in July, 1872, appellant paid $52 to the city, and obtained a license to keep a grocery or saloon, and to sell intoxicating liquors, until the first of July, 1873; on the fourth of June, 1873, the mayor revoked the license, for the reason that appellant had been convicted of keeping open his grocery or saloon on Sunday, in violation of an ordinance of the city; after the revocation he kept open his grocery or saloon, and

sold liquor as usual during the balance of the month of June, 1873.

It further appears, from the license itself, and the city ordinances, that the power was reserved to the mayor to revoke the license. The license contained this clause: "To be subject to such ordinances of the said city of Chicago, now or hereafter in force, and the laws of said State in regard to the sale of wines and liquors, and to revocation at the will of the mayor; and the premises shall not be open from 12 o'clock on Saturday night until 12 o'clock Sunday night, or on any days of election. (No billiard table or tables shall be kept on or about the premises without a license therefor from the city of Chicago, whether in actual use or not.) No vagrant, no keeper of house of ill fame, no prostitute, no drunken or disorderly person, shall be allowed in or about the premises." And after reciting various other prohibitions, it declares that, "nevertheless, this license, with all the rights under it, is subject to revocation, at the discretion of the mayor, and this license, with all the rights under it, shall terminate absolutely upon the notice of said revocation being left at the bar, and the person to whom it is issued shall stand in the same position as if he had not taken out any license."

The city ordinance contains this provision: "Any license so granted may be revoked, upon written notice by the mayor, whenever it shall appear, to his satisfaction, that the party licensed shall have violated any provision of any ordinance of the common council relating to spirituous liquors, or any condition of the bond aforesaid."

The ordinances in force at the time the license was granted, contained this provision: "If any person shall keep open any tippling house on the Sabbath day or night, or shall keep open any bar or place where intoxicating drinks are or may be kept, or shall sell or retail any intoxicating drinks on the Sabbath day or night, * * * every such person, upon conviction, shall be fined in a sum not less than $10 nor more than $100."

The charter under which these ordinances were adopted, contains these provisions, giving power to the city: "To regulate the selling or giving away of any ardent spirits by any shop-keeper, trader or grocer, to be drunk in any shop, store or grocery, out-house, yard, garden, or other place within the city; to license, regulate and restrain tavern keepers, grocers and keepers of ordinaries and victualing establishments, or other houses or places for the selling or giving away wines and other liquors, whether ardent, vinous or fermented; to suppress and restrain disorderly houses and groceries, and houses of ill-fame, and to authorize the destruction and demolition of all instruments or devices used for the purpose of gaming."

Here are powers conferred upon the city which would seem to be ample to justify the action taken in this case. The power is given to regulate the selling or giving away any ardent spirits; to license, regulate and restrain tavern keepers, grocers, and keepers of ordinaries and victualing houses, or other places for selling or giving away such liquors, etc.; and to suppress and restrain disorderly houses and groceries, and houses of ill fame. The license was to keep a saloon or grocery, and this latter term has generally been used by the General Assembly to designate a place where liquors are retailed to be drunk—and that is the general meaning applied to the word. Hence we shall presume that such was the meaning intended to be attached to it in these provisions of the charter, and especially so when we fail to see to what else it could be reasonably applied.

It is, however, contended, that, inasmuch as when the legislature, in granting powers to municipal bodies, prescribes the manner in which they shall be exercised, the body must be limited to that mode, and can adopt no other, and that the legislature having authorized the city to exercise its power through ordinances, and to enforce them by fine, the right to exercise its powers by forfeiture can not be sustained. If the only means intended to be given to the city of enforc-

ing these powers is by fine, then the position of counsel is correct. But is that the only means given? Evidently not, as the language is broader and more comprehensive.

It will hardly be contended that to suppress groceries the city would be compelled to grant licenses, and only be allowed to fine the person to whom granted for a violation of the ordinances regulating the sale of liquors. It might, with the same reason, be insisted that the city could not refuse a license for such a purpose and take a bond, as the charter has authorized, conditioned that he should observe the ordinances on the subject, and have no other remedy than an action on the bond. All know that this would not be suppression. To suppress must mean to prevent, and not to license or sanction the act to be suppressed. It would be a confusion of terms to say that a thing· is suppressed, when it is protected, licensed and encouraged. When the legislature conferred the power to suppress these groceries where liquor was sold, or to regulate, license and restrain the same, it was a matter purely discretionary whether or not the city would wholly prohibit its sale, or license and regulate the traffic. Without the common council choose to do so, there is no power short of legislative enactment that can compel the grant of authority to sell such liquors.

In the interest of good government, of good morals, of good order, and the prevention of crime, misery, want, and a thousand ills attending such a traffic, the legislature has vested the city authorities with these salutary powers, and the courts are powerless to abrogate them. We presume no one would have the hardihood to contend that the retail sale of intoxicating drinks does not tend, in a large degree, to demoralize the community, to foster vice, produce crime and beggary, want and misery. And if such is the tendency, it should not have unrestrained license to produce these results. If sanctioned at all, it should be under restraints, that will suppress or at least mitigate such evils to society.

From an early period in civilization, in all countries, the unrestricted sale of such drinks has been regarded as pernicious. Hence, as it is believed, in the code of laws in every civilized State, it has, at all times, been regulated and put under restraint. In this respect it has formed an exception to other legitimate business, and it is believed to have resulted from humane feelings, and a desire to suppress immorality, vice, crime and disorder, and the other miseries that follow in its train. This restraint is not the peculiar growth of any particular political faith, or of any creed or sect, but seems to be a desire implanted in our nature to protect our race and kind from such evils; and it is implanted in the police power of State, and may be exercised as the law maker shall deem for the best interests of society. Its pernicious tendency would fully authorize its exercise even to its absolute prohibition as an article of sale. And when the legislature granted power to suppress groceries, they conferred power on the city which they might exercise even to that extent.

The legislature, then, having conferred such power, it was for the common council to determine whether they would wholly suppress the sale of intoxicating liquors, or grant the privilege on such terms and conditions as they might choose. And the power was ample, under this grant, to impose as a condition, that when a license is granted it should be liable to revocation on the violation of the ordinances regulating the traffic, or, having absolute control over the whole subject of granting licenses, they may impose any other condition calculated to protect the community, preserve order, and to suppress vice.

These restraints are not like such as restrict the ordinary avocations of life, which advance human happiness, or trade and commerce—that neither produce immorality, suffering nor want. This business is, on principle, within the police power of the State, and restrictions which may rightfully be imposed upon it might be obnoxious as an illegal restraint of trade when applied to other pursuits. The city, then, had a

29—68TH ILL.

right to make it a condition that appellant's grocery should be closed on election days, on thanksgiving days, fast days, holidays, Sundays, or other days, or might have imposed as a condition that appellant should close his grocery at a particular hour on each evening ; and for a violation of any of these conditions, have provided for a forfeiture of his license. They had the power to insert, as they have done, each and all of the prohibitions contained in his license ; and the power grows out of the fact that it was discretionary to prohibit such sale of liquors, or license it on such terms as they might choose.

The city had exercised its power to grant licenses on the terms imposed by the ordinances. Appellant saw proper to apply for and obtain a license on these terms. The license contained the condition that if he violated any of the ordinances or disregarded the restrictions imposed in the license, it might be revoked, even at the discretion of the mayor. He received the license on the condition that it might be revoked if he should sell liquor on Sunday, and he thereby assented to the terms and conditions. The charter authorized the imposition of the condition, and he violated it, and the license was properly revoked, and he was rightfully convicted for selling liquor after the revocation, as his power to do so then ceased.

The authority conferred to make, publish, ordain, amend and repeal all ordinances and police regulations (not contrary to the constitution of the State) for the good order of the city, and the trade and commerce thereof, as may be necessary or expedient to carry into effect the powers vested in the common council, or any officer of the city, by this act, and to enforce the observance of all rules, ordinances, by-laws, and police and other regulations, made in pursuance of the charter, by penalties not exceeding $100 for any offense against the same, does not necessarily confine the city to that mode alone. It does not declare that no other means shall be adopted; and we have seen that, by the police power conferred by the portions of the charter previously referred to, the city

might have prohibited the sale of such liquors entirely, and this would have been one of the means of enforcing the police power and promoting good order in the city. And in another part of the charter, the city is empowered to take a bond and security before they shall grant a license, and yet that is not referred to in this section, and, like the power to suppress, it is in force and may be exercised.

Much stress is placed on the supposed vested right to the privileges conferred by the license. If, as we have seen, the control of the sale of liquors is a police regulation, then no one can obtain such a vested right in it as that it may not be resumed when the interests of society require it. In the cases of *The Galena and Chicago U. R. R.* v. *Dill,* 22 Ill. 264, *Ohio and Miss. R. R.* v. *McClelland,* 25 Ill. 140, *Galena and Chicago U. R. R.* v. *Appleby,* 28 Ill. 283, this question was discussed, and it was intimated that the legislature could not so far divest itself of the right to exercise the police power that it could not resume it, whether delegated to individuals or to corporations. And it was said, that we could never intend that the legislature designed to do so, unless it was by clear, explicit and unmistakable language. So, here, we can not infer that the legislature or the city intended to unconditionally part with the power for the period for which the license was granted. This being true, appellant took this license subject to be controlled by the police power. We can never hold that a person can acquire an absolute, vested right to such a license for any definite period beyond the control of the police power of the State.

This, then, renders all of the cases but one or two referred to by counsel valueless as authority on this question. These cases, with one or two exceptions, hold that it is beyond the power of a municipal corporation to declare a forfeiture of property which a party may lawfully hold, as the penalty for the violation of an ordinance. To this doctrine we yield our full approval, but we conceive it does not apply to the case at bar. The case of *The City of Hannibal* v. *Guyat,* 18 Mo. 515,

presented a question widely different from this. There, the defendant had obtained a license under the law of the State, and before the license had expired the city passed an ordinance requiring all persons selling liquor in the city to obtain a license or become liable to a fine for selling without such license. The defendant failing to comply with the ordinance, the city sued for the penalty, and the court held that the city had no power to abrogate his State license, which, in the opinion, is called a vested right. But we apprehend that as full and as ample power was not given the city by that charter to suppress groceries as is conceded by the charter in this case. Again, we presume the court did not intend to hold that the right was vested beyond the controlling power of the State, but only as against the city.

The case of *Heise* v. *The Town of Columbia,* 6 Rich. S. C. 418, seems to proceed upon the ground that the power to regulate and restrain did not confer the power to destroy or suppress. And in this is the vital distinction between the two charters. Had the charter not, in this case, expressly conferred the power to suppress groceries, a different question would have been presented. But opposed to those cases are *Met. Board of Excise* v. *Barrie,* 34 New York, 657, *Calder* v. *Kirby,* 5 Gray, 597, and *State* v. *Holmes,* 38 N. H. 225, which hold that such licenses are revocable, and that in doing so no constitutional right is violated.

But, above all, appellant, by accepting and acting under this license, consented that the mayor might, in his discretion, revoke it, and, having agreed to it, he now has no right to insist that it shall be adjudged forfeited by a judicial tribunal —by some process which does not occur to us as applicable to that end.

The judgment of the court below is affirmed.

*Judgment affirmed.*