State v. Fay.

---

### STATE v. GEORGE W. FAY.

1. Under the "Malt Liquors Act," approved April 4th, 1872, (*Rev.*, p. 494, § 13,) a single sale of any of the liquors mentioned without license, makes the seller liable to indictment as keeper of a disorderly house.
2. The act is operative throughout the state except in townships, cities and incorporated towns, where laws are in force regulating the sale of such liquors, outside of inns and taverns.
3. Authority conferred upon a town to *prohibit* all traffic in or sale of intoxicating drinks, with authority to *license, regulate or prohibit* inns and taverns—*Held* not to embrace authority to *regulate* the sale of liquors outside of inns and taverns.

On error to the Atlantic Oyer and Terminer.

Argued at June Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and PARKER.

For the state, *A. H. Sharp.*

For the plaintiff, *H. L. & A. L. Slape.*

The opinion of the court was delivered by

DIXON, J. The defendant was indicted for keeping a disorderly house in the town of Hammonton, Atlantic county. The offence proved was the sale of lager beer in less quantity

than a quart, to be drunk upon the premises where it was sold, without license; and the court charged that such a sale on more than one occasion constituted guilt under the indictment. The defendant, by writ of error, complains of this instruction.

The charge can be sustained only by force of the thirteenth section of the act to regulate the sale of ale and other malt liquors, approved April 4th, 1872, (*Rev., p.* 494,) which provides that if any person shall sell any of the liquors aforesaid, (among them being lager beer,) without license first obtained according to the act, then such person shall be held as a keeper of a disorderly house, and be liable to indictment and punishment as such. ·

This statute, if applicable, plainly rendered the defendant subject to conviction of the offence alleged and justified the charge. But it is claimed to be inapplicable, because its fourteenth section declares that none of its provisions shall apply to any township, city or incorporated town in which laws are in force regulating the sale of any of the liquors mentioned in the act.

The question therefore becomes resolved into this, whether, in the town of Hammonton, there were in force any laws (*i. e.,* any laws other than the general law,) regulating the sale of these liquors. The only law referred to by the defendant is the act incorporating the town, (*Pamph. L.* 1866, *p.* 188,) the twenty-third section of which provides that the corporation may have power to pass, enforce, alter and repeal ordinances to take effect within the town for the following purposes, to wit, * * * to license, regulate and prohibit inns or taverns, and to prohibit all traffic in or sale of intoxicating drink or drinks.

The clause in this charter concerning inns and taverns should not be permitted to exclude from the town the operation of the "Malt Liquors Act," for the reason that in our legislation the keeping of inns and the retail traffic in malt liquors are treated as distinct subjects of regulation. Although inn-keepers may, under their licenses, retail malt liquors, and

so, in a sense, laws regulating inns regulate the sale of these liquors, yet we think that the laws regulating such sale, which are intended by this fourteenth section, are those laws referring to the traffic apart from inn-keeping, laws which, in this respect, resemble the "Malt Liquors Act" itself. Hence, no support for the defendant's contention is to be derived from this clause of the charter.

But does the clause for the prohibition of all traffic in intoxicating drinks constitute a law for the regulation of the sale of these liquors, and so save the town from the operation of the statute?

The leading rules for the construction of municipal charters are well summed up by Mr. Dillon, as follows: "A municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." 1 *Dill. on Mun. Corp.* (3d ed.), § 89.

In the charter now before us, the power expressly granted is the power to prohibit the sale. This is not equivalent to nor does it fairly embrace a power to regulate. The exercise of the latter power provides for the continuance of the traffic under prescribed rules; the former power is to be wielded only for its suppression. As was said in *Schwuchow* v. *Chicago*, 68 *Ill.* 444: "To suppress must mean to prevent and not to license or sanction the act to be suppressed. It would be a confusion of terms to say that a thing is suppressed when it is protected, licensed or encouraged." And in *City of St. Louis* v. *Smith*, 2 *Mo.* 113, the court, speaking of authority to restrain and prohibit tippling-houses, said: "The legislature intended to give the corporation by the words ' restrain and prohibit' two powers: one was to prohibit their existence altogether, if they thought it best to do so,

and the other was to keep them within certain limits, as to the number and order, as they should think best."

In *Gunnarssohn* v. *City of Sterling*, 92 *Ill.* 569, it was indeed said that a general power to prohibit is sufficient to authorize any partial prohibition deemed advisable, but the court was speaking of an ordinance which merely forbade sales in quantities less than five gallons, and did not attempt to regulate permitted sales. By carrying out this notion of partial interdiction to its furthest extent, it might be made to appear that a prohibition of all sales which were not made in conformity with designated requirements would operate as a regulation of the traffic; but an exercise of the power to prohibit, with this end of regulation in view, would be a manifest strain of authority, and of such doubtful propriety as to come under the condemnation of the rules before mentioned. For, intrinsically, regulation and prohibition range in different spheres: no sale which is prohibited is regulated, and none regulated is prohibited. This interpretation of the grant of power in this charter is enforced by the context. The power immediately preceding this is, " to license, regulate and prohibit inns and taverns." The power immediately following is, "to license, regulate and prohibit hawkers and peddlers." This power is merely " to prohibit all traffic in or sale of intoxicating drinks." Such language is tantamount to a declaration that the legislature gives authority to prohibit, but withholds authority to license or regulate the traffic.

My conclusion therefore is, that in neither of these clauses which relate to inns and intoxicating drinks, is there expressed, or by fair implication to be found, any law for regulating the sale of malt liquors in the town, outside of inns and taverns.

The other provisions of the charter relating to nuisances and vice and immorality have been noticed, but it is not perceived that they contain any warrant for regulating the mere sale of malt liquors; such sale, of itself, except so far as it is interdicted by positive statute, is not, under our law, either a nuisance or vicious or immoral. Nor is there any declared object or purpose of the corporation to which this power of

regulation, in addition to the power of prohibition or suppression, seems indispensable. Hence the "Malt Liquors Act" prevails in the town of Hammonton, and under its provisions the defendant was, for a single sale, rightly convicted of keeping a disorderly house, and the judgment below should be affirmed.