[No. 1639.]

W. L. WALLACE, PETITIONER AND RELATOR, *v.* THE MAYOR AND CITY COUNCIL OF THE CITY OF RENO, RESPONDENTS.

CONSTITUTIONAL LAW—LEGISLATIVE POWER—BUSINESS LICENSE—REVOCATION.
1. The people, and through them the legislature, have supreme power in all matters of government, where not restricted by constitutional limitations.
2. Section 20, subd. 8, of the act incorporating the town of Reno, approved March 16, 1903, and sections 1 and 3 of the act empowering city and other boards to revoke and discontinue business licenses, approved March 10, 1903, are not repugnant to any provision of our state or federal constitutions; and under them, at the instance of a member and by unanimous consent of the board, a license may be revoked without notice to the licensee, where there is reason to believe that the business is a nuisance, a menace to public health, or detrimental to peace or morals.

(Syllabus by the Court.)

APPLICATION of W. L. Wallace for a writ of review and stay of proceedings against the Mayor and City Council of the City of Reno. **Demurrer to petition sustained.**

The facts sufficiently appear in the opinion.

*Leishman & Hummel,* for Petitioner and Relator:

I.   The attention of the court is called to the fact, that the petition on file states facts sufficient to allege that respondents are a *de facto* board within the meaning of the law, and as such are exercising its functions, and their acts are therefore liable to review by this honorable court.   (*Cole* v. *Kegler*, 19 N. W. 843.)

II.   A *de facto* officer is one whose acts, though not those of a lawful officer, are valid as far as they affect the interest of the public and third parties where the duties of the office are exercised under color of a known election or appointment, until such time as they shall be declared usurpers by a court of competent jurisdiction.

III.   The laws of Nevada give to the supreme and district courts concurrent jurisdiction to issue writs of review, and do not require that an application to the supreme court for such original writ must be accompanied by any affidavit showing why the application was not made to the district court.

IV.   The powers of city councils are confined to those expressed in their charter.   (*City of Leavenworth* v. *Norton*, 1 Kan. 432; *Low* v. *City of Marysville*, 5 Cal. 214; *Kyle* v. *Milan*, 8 Ind. 34.)   Or by necessary intendment or implication.   (*Glass* v. *Ashbury*, 4 Cal. 571; *Cottman* v. *San Francisco*, 20 Cal. 96.)   City charters are to be strictly construed. (*Leonard* v. *City of Canton*, 35 Miss. 189.)   In what manner must a city council act?   Municipal corporations in the exercise of these powers must act either by resolution or ordinance.   (Beach on Public Corporations, vol. 1, 551–3.)   Their actions are not effective without an ordinance.   (*Radway* v. *West*, 60 Ind. 371.)

V.   Counsel for respondents claim that the statute gives to the board of city council complete discretionary power; but we submit that all that is conferred upon them is the right to enforce their powers in the exercise of a sound discretion and with due regard to the constitutional rights of the citizen.   (*Kirkham* v. *Russell*, 76 Va. 956.)   The corporation cannot take to itself any powers merely by implication as they are properly the creatures of legislation having no powers except what are conferred upon them by their char-

ter.   Their charters are the breath of their existence: they are what give them life, and they must live and act according to the rules laid down for them in those creative instruments, and other rules laid down by the power which created them.   The grant of power to them by such acts is limited and subjected to a strict construction.   (*City of Leavenworth v. Norton,* 1 Kan. 432; 1 Clarke Ch. Rep. p. 230.)   The facts upon which a revocation of petitioner's license was based must also appear by the record and must be embodied in the motion or resolution revoking the same.   (*State* v. *Dwyer,* 21 Minn. 512.)

*E. L. Williams,* City Attorney of Reno, for Respondents:

I.   It appears upon the face of the petition asking for the issuance of a writ of review of the proceedings of the city council of the city of Reno, that petitioner does not concede that said board of city council was a legally constituted board.   Regarding the fact that the legal existence of said board is controverted by the allegations of said petition there can be no mistake.   We contend that, if the said board had no legal existence, and only pretended to act, your honorable court would have no jurisdiction to review the proceeding of a board of such description.   In such a case there would be no proceedings to review.   New York laws of 1893 providing that the refusal of an excise board to grant a liquor license may be reviewed on *certiorari* do not grant a review where the board has considered the application on its merits.   (*People* v. *Truman,* 23 N. Y. Supp. 913.)

II.   The petition should show that the applicant has rights, or a valid defense, of which he has been deprived by the erroneous action of the inferior court, or that, without fault or want of diligence on his part, he has been unable to present his rights or defense.   (*Gulf R. Co.* v. *Odom,* 16 S. W. 541.)

III.   Where the lower tribunal has jurisdiction of the proceedings, any error in its conclusions as to facts not affecting its jurisdiction is not reviewable on *certiorari.*   (*Barber* v. *San Francisco,* 42 Cal. 630.)   *Certiorari* will not lie to review the action of the district court in revoking a permit

to sell liquor, as any error committed can be corrected by an appeal. (*State* v. *Schmidtz*, 22 N. W. 673.)

IV.   On the merits of the case see 63 Ill. 444; 5 Gray, 597; 103 Mass. 70; 12 Pick. 183–194, 13 Wend. 325; as to the power of the legislature in general to take away licenses, see *People* v. *Comm.*, 59 N. Y. 92.

V.   The law under which the board of the city council of the city of Reno acted in revoking the retail license of W. L. Wallace (Stats. 1903, p. 80) provided for the revoking of such license by the board of county commissioners where there is reason to believe that a business licensed is a nuisance, a menace to public health or detrimental to the peace or morals of any community in the county in which such business may be conducted; *provided*, that such revocation, withdrawal or discontinuance of such license shall when the action is taken on motion of, or at the instance of a member of the board be by unanimous consent of the members of such board, and section 3 of the same act makes such act applicable to all licensing officers, town boards and city trustees and to the city council or board of aldermen of any incorporated city, town or municipal government within this state.   Hence, our contention is that section 3 of said act confers upon said board of city council the same authority to proceed in a summary way to revoke licenses that section 1 confers upon a board of county commissioners.

*Leishman & Hummel*, for Relator, in reply:

I.   Respondents contend and seem to depend upon the fact that the petition alleges that the said board had no legal existence, and only pretended to act, and that therefore this honorable court would have no jurisdiction to review the proceedings of a board of such description.   Again citing your honors to the brief of relator, filed at your suggestion on the day of the hearing, we add:   "An officer *de facto* is one who performs the duties of an office with apparent right and under claim and color of an appointment, but without being actually qualified in law so to act."   (37 Me. 433.)

II.   Counsel for respondents evidently agrees with us when he says that we are entitled to have redress by *certiorari* and cites *Tucker* v. *Chosen Freeholders*, 1 N. J. Eq.

282. Summing up, attorney for respondents cites several decisions "on the merits of the case" as to the power in general to take away licenses, which we respectfully submit are at this time premature.

By the Court, TALBOT, J.:

Among other things, the petitioner alleges that on the 15th day of May, 1903, he paid for and received a license from the city of Reno to conduct the business of retail liquor dealer for the period of three months; that on or about the 3d day of last June he received a request from the respondents to attend a meeting on the same evening, and to give them all the information he possessed relative to an alleged charge that he was conducting his business in such a manner as to be a nuisance, or detrimental to public peace or morals; that he complied with this request, and stated he would do all he could to protect his patrons; that later, and on or about the 3d day of June, he was served with a citation issued by the respondents, ordering him to appear before the council on the 4th day of June, and show cause why his license should not be revoked; that the citation did not state the grounds upon which it was proposed to revoke the license; that no due and legal proceedings or investigation were had, and no evidence relevant, competent, or material was introduced tending to prove the truth of the charge; that the council then adjourned until June 6th, at 6 p. m., when, on motion, the license of petitioner was revoked, withdrawn, and discontinued; that during the investigation respondent Luke stated that he had received information relative to the charge at a time other than their regular open meeting, but when sworn as a witness on behalf of petitioner he refused to divulge the names of his informants.

It is further asserted in the petition that respondents acted in excess of their jurisdiction because their proceedings were arbitrary, and petitioner did not have an opportunity to make a fair, full, legal, and complete defense to the charge; and, further, that they had no legal power or authority to conduct such investigation, or to issue citation to petitioner, or to revoke his license, unless upon a complaint or petition being first filed with them.

Respondents demur to the petition on the ground that it fails to state sufficient facts in different respects.

We deem it necessary to consider only one of the objections raised, as that goes to the merits and is conclusive. It may be assumed from the allegations of the petition, and it was conceded on the argument, that the city council voted unanimously in favor of revoking the license.

Section 20, subd. 8, of the act incorporating the city of Reno (Stats. 1903, p. 189), specifies that the city council shall have power "to fix and regulate a license upon, and regulate all characters of business conducted within the corporate limits, and to license, regulate, prohibit or prescribe the locacation of saloons or barrooms."

Sections 1 and 3 of an act approved March 10, last (Stats. 1903, p. 81), authorizes all city councils and licensing boards "to revoke, withdraw and discontinue any business license where there is reason to believe that such business is a nuisance, a menace to public health or detrimental to the peace or morals; *provided*, that such revocation, withdrawal or discontinuance shall, when the action is taken on motion of, or at the instance of a member of the board, be by unanimous consent." This language does not suggest any notice to the licensee, and, so far as the statute is concerned, it is apparent that none is necessary when the license is revoked on the motion of a member and by unanimous vote of the board, and that they may act *ex parte* and arbitrarily, and the only protection to the innocent holder of a license lies in the unanimity required for its revocation, and in the honesty, confidence and efficiency of the members of the board as public officials, and the probability that it would be restored upon a showing that it had been unjustly or improperly annulled. Regardless of the requirements and validity of the statute, it is fairer and better that notice be given as was done in this case. By appearing the petitioner waived notice, but, as he objects to the sufficiency of the citation, we prefer to treat the case on the merits, and as if there had been no notice or appearance.

Section 2 of the act last mentioned provides another method of revocation, and for an investigation by the board, on the petition of a taxpayer, supported by 10 per cent of

the freeholders, but is. also silent regarding notice to the license.

It becomes pertinent to determine whether the petitioner has a vested or contract right in his license, of which he cannot be deprived without formal process of law by the legislature, or the city council through those statutory enactments, under the fifth amendment to the constitution of the United States, providing that no person shall be deprived of life, liberty, or property without due process of law, or under the limitations of our state constitution. In the latter document, section 2 of article I proclaims the fundamental truth that all political power is inherent in the people, that government is instituted for their protection, security, and benefit, and that they have the right to alter and reform the same whenever the public good may require. Section 20 of article IV prohibits the legislature from passing local or special laws for the assessment and collection of taxes, and article X requires the legislature to provide for a uniform and equal rate of assessment and taxation and for a just valuation of all property. As held by this court in *Ex parte Robinson*, 12 Nev. 263, 28 Am. Rep. 794, and *Ex parte Cohn*, 13 Nev. 427, these limitations apply to taxes, and not to licenses, leaving the legislature to regulate the latter with a free hand where they do not encroach and discriminate in relation to taxes as properly and ordinarily understood, and without other restraint except the responsibility of the legislators to their constituents.

Questions kindred to the main one here have been carefully considered by a number of courts in our sister states, and by the Supreme Court of the United States, and the reasoning and conclusions reached are peculiarly applicable and convincing.

In *State* v. *Schmidtz*, 65 Iowa, 556, 22 N. W. 673, this language is used in the decision: "The law under which the permit was issued provides in express terms that if the defendant sold liquors for unlawful purposes the permit should be revoked. He received and accepted the permit under such condition. He was not, therefore, deprived of property when the permit was revoked. (*Hurber* v. *Baugh*, 43 Iowa, 514.) Therefore it cannot be said that the defend-

ant has been deprived of property without due process of law."

We quote extensively from *La Croix* v. *County Commissioners*, 49 Conn. 591:

"The present complainant insists that the general assembly have no more power to confer the jurisdiction mentioned upon the county commissioners as a board than they have to confer the same jurisdiction upon them as a court, because he claims that his license is a contract between him and the state, vesting in him the right from the 2d day of November, 1881, until the 31st day of October, 1882, to sell intoxicating liquors in his saloon at Westport, unless during that period he has violated or shall violate some provision of the laws in relation to such liquors, and shall be convicted of such violation in due course of law. And he also insists that his license is property for which he has paid a valuable consideration, and of which he cannot be deprived but by the judgment of a court of competent jurisdiction upon the verdict of a jury. There is a clear preponderance of authority in support of the doctrine that licenses like that of the complainant are not contracts between the state and the parties licensed, and are not property in any constitutional sense. They form, moreover, a part of the internal police system of the state, are granted in the exercise of the police power which is inherent in every sovereignty, and cannot in any manner be alienated, and may at any time be revoked by legislative authority.

"In the case of *Calder* v. *Kurby*, 5 Gray, 597, a license to sell intoxicating liquors had been granted for a certain period. Before the period had expired the license was annulled. It was urged upon the argument in behalf of. the plaintiff that the license was a contract and within the protection of the constitution of the United States. But the court overruled the claim. Mr. Justice Bigelow in giving the opinion says: 'The whole argument of the counsel for the plaintiff is founded on a fallacy. A license authorizing a person to retail spirituous liquors does not create any contract between him and the government. It bears no resemblance to an act of incorporation, by which, in consideration of the supposed benefits to the public, certain rights and privileges are granted by the legislature to individuals,

under which they embark their skill, enterprise, and capital. The statute regulating licensed houses has a very different scope and purpose. The effect of a license is merely to permit a person to carry on the trade under certain regulations and to exempt him from the penalties provided for unlawful sales. It therefore contained none of the elements of a contract. The sum paid for it was merely nominal, and there was no agreement, either express or implied, that it should be irrevocable. On the contrary, it is manifest that this statute, like those authorizing the licensing of theatrical exhibitions and shows, sales of fireworks and the like, was a mere police regulation, intended to regulate trade, prevent injurious practices, and promote the good order and welfare of the community, and liable to be modified and repealed whenever, in the judgment of the legislature, it failed to accomplish these objects.

"The Supreme Court of New Hampshire, in the case of *State* v. *Holmes*, 38 N. H. 225, came to the same conclusion as the court of Massachusetts, upon the same course of reasoning. The Chief Justice in giving the opinion says: 'It is an essential ingredient of a legal license that it confers no right or estate or vested interest, but is at all times revocable at the pleasure of the party who grants it. Nor has the word any popular use which differs from the legal definition. In both the legal and the popular sense the term "license" implies no right or estate conveyed or conceded, no binding contract between parties, but mere license and liberty to be enjoyed as a matter of indulgence, at the will of the party who gives the license.'

"The same doctrine is recognized and enforced by the Court of Appeals of the State of New York in the case of *Metropolitan Board of Excise* v. *Barrie*, 34 N. Y. 657. The court in that case declare that licenses to sell intoxicating liquors are not contracts between the state and the persons licensed, giving to the latter vested rights, protected on general principles and by the constitution of the United States against subsequent legislation; nor are they property in any legal or constitutional sense; that they have neither the qualities of a contract or of property, but are merely temporary permits to do what otherwise would be an offense

against a general law; that they form a portion of the internal police system of the state; are issued in the exercise of its police powers, and are subject to the discretion of the state government, which may modify, revoke, or continue them, as it may deem fit. The court in the same case also declare that the necessary powers of the legislature over all subjects of internal police, being a part of the general grant of the legislative power given by the constitution, cannot be sold, given away, or relinquished.

"The Court of Appeals of the State of Maryland, in the case of *Fell* v. *The State,* 42 Md. 71, 20 Am. Rep. 83, hold the same doctrine. In that case the court say that 'the legislature has power to prohibit the sale of spirituous or fermented liquors in any part of the state, notwithstanding a party to be affected by the law may have procured a license under the general license laws of the state, which has not yet expired. Such a license is in no sense a contract made by the state with the party holding the license. It is a mere permit, subject to be modified or annulled at the pleasure of the legislature, who have the power to change or repeal the law under which the license was granted.'

"In *Hirn* v. *The State of Ohio,* 1 Ohio St. 21, the plaintiff had been granted a license under the laws of that state to keep an inn, which permitted him to sell spirituous liquors for a certain period of time, and had paid therefor a substantial license fee. Before the expiration of that period the legislature passed an act repealing the law under which the license was granted, and thereby revoked the license. The plaintiff contended that the legislature had no power to pass such an act. But the court said they were not disposed to question the power of the legislature in a matter of that kind, connected, as it was, with the public policy and domestic regulations of the state; that, upon the ground of protecting the health, morals, and good order of the community, they were not prepared to say that the legislature did not possess the power to revoke such license. They added, however, that, where there had been no forfeiture of the license by abuse or a violation of its terms, common honesty would require that the money obtained for it should be refunded in case of its revocation.

"The doctrine of the cases of *Calder* v. *Kurby*, *State* v. *Holmes*, *Metropolitan Board of Excise* v. *Barrie*, and *Fell* v. *The State*, is strongly supported by decisions of the Supreme Court of the United States in the cases of *Beer Company* v. *Massachusetts*, 97 U. S. 25, 24 L. Ed. 989; *Patterson* v. *Kentucky*, 97 U. S. 501, 24 L. Ed. 1115; *Fertilizing Company* v. *Hyde Park*, 97 U. S. 659, 24 L. Ed. 1036; and *Stone* v. *Mississippi*, 101 U. S. 814, 25 L. Ed. 1079.

"Mr. Justice Bradley, in giving the opinion of the court in *Beer Company* v. *Massachusetts*, says: 'Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizen, and to the preservation of good order and the public morals. The legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim, "*Salus populi suprema est lex*," and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion may no more be bargained away than the power itself.' Again he says: 'All rights are held subject to the police power of the state. If the public safety or the public morals require the discontinuance of any manufacture or traffic, the hand of the legislature cannot be stayed from providing for its discontinuance by any incidental inconvenience which individuals or corporations may suffer.'

"The opinion by Taney, C. J., in the *License Cases*, 46 U. S. 504, 12 L. Ed. 256, was to the same effect, and it was there held that nothing in the statute they were considering should be so construed as to require the county commissioners to grant any licenses when in their opinion the public good did not require them to be granted.

"In the case of *People, ex rel. Beller*, v. *Wright*, 3 Hun, 306, Hardin, J., in a very brief opinion, says: 'The relator was not entitled to a trial by jury. The statute under which he received his license expressly authorizes and empowers the board of excise, when they shall become

satisfied that any such person or persons has or have violated any of the provisions of the act, to revoke, cancel, and annul the license of such person or persons. The license was merely a permit given to the relator, under which he was authorized to sell ale or beer. It does not give him any property or vested right to enjoy the privileges thereof beyond the time when the board should become satisfied that he had violated any of the provisions of the act.'

"The New York Court of Appeals arrived at the same conclusion in the case of *People, ex rel. Presmeyer,* v. *The Board of Commissioners of Police and Excise,* 59 N. Y. 92. In that case the relator had obtained a license from the respondent board for the sale of intoxicating liquors in the city of Brooklyn under the provisions of the statutes referred to in the case last cited. Before the license expired complaint was made to the superintendent of police against the relator for keeping open his saloon on Sunday for the sale of beer, and for selling beer therein on that day, in violation of the statutes. The respondent board thereupon summoned the relator to show cause before them why his license should not be revoked, as prescribed by section 4, c. 549, p. 861, Laws N. Y. 1873. The relator appeared before the board, and protested against further proceedings on the ground that the board had no jurisdiction, and that the complaint preferred alleged no violation of the excise law. These objections were overruled by the board; and thereupon relator filed a motion in the Supreme Court of the Second Judicial Department of New York at a special term for a writ of prohibition to compel the board to desist from proceedings to revoke the relator's license. The motion was there denied. The case then went to the Supreme Court of the same judicial department at the general term, and there the order for a special term denying the motion was affirmed. The relator then took the case to the Court of Appeals, and there the order of the general term was affirmed; and it was held that the power to license and to cancel licenses is vested in the legislature, and that the mode and manner in which it shall be done rests in the legislative discretion."

In *State* v. *Holmes,* 38 N. H. 225, it was held that a license to sell spirituous liquors granted under an act of the legis-

lature gave no vested right, and was revoked and annulled by the repeal of the statute before the expiration of the time limited in the license.

In *Martin* v. *State*, 23 Neb. 377, 36 N. W. 557, Reese, C. J., delivering the opinion of the court, says: "But it is contended that, before the mayor and council can legally revoke the license, notice must be given to the licensee, in order that he may show cause, if any exists, why the license should not be revoked. In support of this contention, it is insisted that the license is a franchise, or public right, vested in the individual, and for which he has paid a consideration, and therefore it has all the necessary elements of property, under the provision of the constitution that 'no person shall be deprived of life, liberty, or property, without due process of law.' (Const. sec. 3, art. I.) There is no vested right in a license to sell intoxicating liquors which the state may not take away at pleasure. (*Pleuler* v. *The State*, 11 Neb. 575, 10 N. W. 481.) Such licenses are not contracts between the state or municipality issuing them and the licensee, but are mere temporary permits to do what otherwise would be unlawful. (*Board of Excise* v. *Barrie*, 34 N. Y. 657.) They are subject to the direction of the government, which may revoke them as it deems fit, and may be abrogated by the adoption of a municipal ordinance prohibiting the sale of liquors. (*Columbus* v. *Cutcomp* (Iowa) 17 N. W. 47.)"

We quote from a part of the opinion by Durfee, C. J., in *Child* v. *Bemus*, 17 R. I. 231, 21 Atl. 539, 12 L. R. A. 57: "The defendant's first point is that the city council, in conferring upon the mayor power to revoke, exceeded their authority under the charter. The authority given by the charter is expressed in broad terms. It is to make laws, ordinances, and regulations relative to hackney carriages and licensing them. The language seems to us to be broad enough to authorize, not only the granting of licenses, but also the granting of them subject to a power of revocation. And we see no reason why such power may not be vested by ordinance in the mayor. It is argued that the licensee has a vested right in his license beyond the city council's power to forfeit. Assuming that this would be so if the power to revoke were not reserved, it seems to us that when, as here,

the license is granted under an ordinance that gives or
reserves the power, it is to be regarded as subject to the
power and terminable by its exercise. The license is in the
nature of a privilege to perform a public service or function
for reward, which service or function, for the public good
and to secure its orderly and efficient performance, must be
subjected to certain regulations. These regulations must be
obeyed, and therefore the power to revoke the license is
highly important. The defendant contends that the city
council, if it was authorized to confer the power, was not
authorized to confer it to be exercised without first giving
notice to the licensee and allowing him an opportunity to be
heard. We acknowledge that an exercise after notice and
hearing would better suit our notions of proper procedure
than an exercise without them. The ordinance prescribes no
procedure, but leaves the matter wholly to the mayor's dis-
cretion. Is the ordinance on this account so unreasonable or
oppressive that it is void?

"The complainant cites *Commonwealth* v. *Kinsley*, 133
Mass. 578. In that case it was decided that a statute author-
izing the selectmen in towns to grant licenses to keep tables
for playing at pool for hire, and providing that 'such licenses
may be revoked at the pleasure of the authority granting it,'
is constitutional. The license was revoked there without
notice. 'A licensee,' say the court, 'takes his license sub-
ject to such conditions as the legislature sees fit to impose,
and one of the statutory conditions of this license was that
it might be revoked by the selectmen at their pleasure.'
Here especially it is to be remembered that the power was
given for administrative, not judicial, purposes. While the
mayor may revoke a license under the power, if it be valid,
without notifying or hearing the licensee, there is, on the
other hand, nothing to prevent his giving a hearing first, if
he sees fit, and the question is whether it is reasonable for
him to be intrusted with such a discretion. It appears from
*Commonwealth* v. *Kinsley, supra,* that the legislature of
Massachusetts considered the conferring of such a power not
unreasonable; for otherwise, presumably, they would not
have conferred it. We have come to the conclusion, after
much consideration, that it is not sufficiently plain that the

power or the clause of the ordinance that grants the power is unreasonable or oppressive to make it our duty to declare it void."

In *City of Grand Rapids* v. *Braudy*, 105 Mich. 670, 64 N. W. 29, 32 L. R. A. 116, 55 Am. St. Rep. 472, the court says: "The only other provision we need to notice is that giving the power to revoke the license arbitrarily. Has the common council the right to insist, as a condition precedent to the issue of the license, that the applicant shall agree that his license may be revoked at the will of the council? is the question presented. The necessity of a rigid control over this business in our large cities is clear. Convictions are difficult, though the public authorities may be well convinced. The business is not necessary to the welfare of society or the public. The common council, with the knowledge of all the facts before them to a greater extent than courts can possibly have, have determined that it is well, in their judgment, to require these conditions. While the exercise of any arbitrary power may seem harsh, still we are of the opinion that this requirement is not so unreasonable as to require the courts to declare it void."

In *Commonwealth* v. *Kinsley*, 133 Mass. 579, the court states: "A license had been duly granted to the defendant, and it had been revoked by the selectmen without giving him notice of their intention to revoke it. The keeping of a pool table for hire is one of many things affecting the public morals, which the legislature can either absolutely prohibit or can regulate, and one common form of regulation is by requiring a license. A licensee takes his license subject to such conditions as the legislature sees fit to impose, and one of the statutory conditions of this license was that it might be revoked by the selectmen at their pleasure. Such a license is not a contract, and a revocation of it does not deprive the defendant of any property, immunity, or privilege, within the meaning of these words in the Declaration of Rights, art. XII. (*Commonwealth* v. *Blackington*, 24 Pick. 352; *Calder* v. *Kurby*, 5 Gray, 597; *Commonwealth* v. *Colton*, 8 Gray, 488; *Commonwealth* v. *Brennan*, 103 Mass. 70; *Commonwealth* v. *Adams*, 109 Mass. 344 *Commonwealth* v. *Fredericks*, 119 Mass. 199.)"

The note on page 519 of 15 Fed., citing authorities, is to the effect that a license to sell liquor is issued as a part of the police system of the state, and is subject to modification or revocation, at the will of the licensor. Under note 2, sec. 363, 1 Dillon's Mun. Cor. (4th ed.), followed by a list of cases, it is said that "licenses to sell liquors are not contracts between the state and the person licensed, giving the latter vested rights, and partaking of the nature of contracts, but are merely temporary permits to do what otherwise would be an offense, issued in the exercise of police powers, and subject to the direction of government, which may revoke them as it deems fit." Other cases in point are *Schwuchow* v. *City of Chicago*, 68 Ill. 444; *Wiggins* v. *City of Chicago*, Id. 372; *State* v. *Cook*, 24 Minn. 247, 31 Am. Rep. 344; *Hurber* v. *Baugh*, 43 Iowa, 514; *Laing* v. *Mayor*, 86 Ga. 756, 13 S. E. 107; *Doyle* v. *Ins. Company*, 94 U. S. 535, 24 L. Ed. 148; *Wiggins* v. *East St. Louis*, 107 U. S. 374, 2 Sup. Ct. 257, 27 L. Ed. 419; *Sights* v. *Yarnalls*, 12 Grat. 292; *Low* v. *Commissioners*, R. M. Charlt. 314; *Commonwealth* v. *Brennan*, 103 Mass. 70; *Commonwealth* v. *Intoxicating Liquors*, 115 Mass. 153.

History tells us that from the early days of Egypt, Greece and Rome the leading nations of the world have maintained restrictions upon the use of wine. The common law of England regulated the sale of ardent spirits, and the same policy has been pursued in this country from colonial days. Custom from time immemorial and the cases cited indicate that the legislature, in the exercise of police power belonging to the state, could prohibit entirely, or impose such conditions as it deemed best for the issuance and annulment of permits to sell intoxicating liquors. They saw fit to authorize the city council to revoke licenses for the reasons and in the manner stated before. The one in question was granted to and accepted by the petitioner under these conditions and after their enactment. It is the rule that, where parties contract or act in contemplation of a statute then in force, its provisions are deemed to constitute a part of the agreement, just as though they had been incorporated in it. (*Hutchins* v. *Town*, 118 N. C. 468, 24 S. E 723, 32 L. R. A. 706, citing *Koonce* v. *Russell*, 103 N. C. 179, 9 S. E. 316; Cooley, Const.

Lim. p. 265; *McCless* v. *Meekins*, 117 N. C. 34, 23 S. E. 99; *Strickland* v. *Pennsylvania* (Pa.) 26 Atl. 431, 21 L. R. A. 224.)

From a general review of the authorities it appears that a license for the sale of liquors may be revoked before the expiration of the time for which it has been granted by act of the legislature directly, or by the will of a majority of the voters expressed at an election, or by the board or mayor in their or his discretion, and with or without notice to the licensee, if statutory authority and conditions be pursued. It is apparent that the respondents acted within the letter and requirements of these statutory provisions, and that they are not unconstitutional.

The demurrer to the petition is sustained for the reasons indicated, and the costs of this proceeding are taxed against the petitioner.

BELKNAP, C. J., and FITZGERALD, J., concur.