[Civ. No. 11310. First Appellate District, Division One.—March 18, 1941.]

VINCENT PETROLEUM CORPORATION, LTD. (a Corporation), Appellant, v. CITY OF CULVER CITY (a Municipal Corporation) et al., Respondents.

Cannon & Callister and David H. Cannon for Appellant.

M. Tellefson, City Attorney, for Respondents.

PETERS, P. J.—Plaintiff appeals from a judgment dismissing its complaint for an injunction entered after the granting of defendants' motion for a judgment on the pleadings. ▇▇ The sole question presented on this appeal is whether the complaint states a cause of action.

The complaint alleges that in 1925 the defendant city adopted ordinances 146 and 153, copies of which are attached to the complaint. By these ordinances it was made unlawful to drill for oil within the corporate limits of the city, except within the limits of a described district. The ordinances required that every permittee, before commencing drilling operations, must furnish to the city a $1,000 bond "conditioned for the faithful drilling and operation of such well and the removal of the derrick and closing up of such well within ninety (90) days from the cessation of drilling operations or other work or operation in connection with such well". They further provided that it should be unlawful to drill for oil within the excepted district without first securing a license

or permit from the city clerk which should cost $250. Any violation of the ordinances was made a misdemeanor.

The complaint alleges that plaintiff is the assignee of a certain oil lease made between Maria Uharriet and others as lessors, and Taylor Oil Company, Ltd., as lessee; that the land covered by the lease is located within the district in which oil drilling is permitted by the above-mentioned ordinances; that in November, 1930, plaintiff's predecessor in interest began drilling "Uharriet Well No. 1" on the leased premises "and diligently continued said operations either by themselves or through the plaintiff . . . to a depth of more than 6061 feet"; that until on or about May 25, 1937, plaintiff has been "doing work on the said well, in an attempt to complete it as a commercially producing oil and gas well." It is further alleged that before commencing drilling operations a permit was secured from the city under the above ordinances; that since beginning operations plaintiff and its predecessor "have complied in every way with the provisions of both of said ordinances"; that a license has been secured from the city clerk and a bond furnished as required by the ordinances; that on or about May 18, 1937, defendants served on plaintiff an order to show cause why the drilling permit should not be revoked; that on or about May 24, 1937, the defendant city adopted resolution No. 2975 revoking the permit. Copies of the order to show cause and the resolution are attached to the complaint. The resolution recites the granting of the permit on November 3, 1930; that the city has granted various extensions of the permit, the last one up to May 30, 1937, which was made subject to the condition that the well be placed on commercial production before said date; that the plaintiff has requested a further extension of the permit; that "it appears from the records and the facts within the personal knowledge of each and all of the members of the City Council that said oil drilling operations have been suspended for long periods of time and have not been prosecuted with reasonable diligence since the original permit was granted in 1930, and that the promoters of said operations have many times definitely agreed that said operations would be completed within a time certain and have thereupon failed to carry on active work and have continuously kept said operations in suspense with little evidence of the fulfillment of any of the agreements made with the City Council during the past three years";

that "it appears to the City Council that a sufficient time has been given to the promoters of said enterprise to demonstrate definitely whether or not oil can be produced in paying quantities, and that further extension of said permit would not assure successful operations within a given time"; that the location of the oil drilling equipment and the uncertainty of the "final disposition of said activities" are detrimental to the property interests of residents of the city in the area involved, and will result, if continued, "in retarding the development of said district to the detriment of the public interest". Predicated on these findings, the resolution provides that (1) the public interest requires that no further extensions of the permit be granted; (2) that the application of plaintiff for such extension is denied; (3) that all permits or extensions granted to plaintiff or its predecessor to drill for oil on the land in question are terminated and revoked "in accordance with the conditions of the last extension of said permit . . . granted to the applicants and accepted by them"; (4) that the city attorney is instructed to notify the permittee and its bonding company to remove all oil drilling equipment from the premises.

The complaint then alleges that, after the adoption of this resolution revoking the permit, plaintiff requested another extension which was refused; that, by reason of the foregoing, plaintiff has been prevented from developing its property; that plaintiff has been threatened by defendants with criminal prosecution if it continues its drilling operations; that plaintiff is informed and believes that the real property covered by the oil lease is rich in oil and gas; that it is impossible to estimate the damage plaintiff will suffer if it is prevented from completing the well; that the action of defendants is depriving plaintiff of its property without due process and "is in violation of the rights secured to the plaintiff by law"; that plaintiff and its predecessor have already spent more than $68,000 in the drilling of the well; that the action and threats of the defendants will compel plaintiff to pay out a large sum in fines and penalties and will cause the frequent arrest of the officers and agents of plaintiff; that, unless defendants are restrained, plaintiff fears defendants will carry out their threats and the business and property of plaintiff will be irreparably injured, and plaintiff will be subjected to a multiplicity of suits.

The prayer of the complaint is as follows: "Wherefore, plaintiff prays that said defendants, and each of them, be enjoined and restrained from revoking, cancelling, or terminating the permit heretofore issued by said City for the drilling of the said 'Uharriet Well No. 1,' and from removing or causing to be removed the oil well derrick, or any of the equipment on the premises now held by the plaintiff as lessee under said oil and gas lease, and from interfering in any way with the action of the plaintiff in going forward with the further drilling or operation of 'Uharriet Well No. 1,' or with the further development of the real property covered by said oil and gas lease; and for such other and further relief as may be just and proper in the premises, and for costs of suit."

Neither the complaint nor the briefs clearly set forth the theory upon which plaintiff contends that it is entitled to the relief prayed for. It is apparently the theory of plaintiff that, having secured a permit, and having spent $68,000 in the development of the well without producing oil, it has some sort of a vested right of contract or property that the city was powerless to take away. It is to be noted that the complaint contains no direct, or, in fact, any indirect, allegation, that the board, in revoking the permit, acted unreasonably, illegally, arbitrarily or fraudulently or in abuse of its powers. Under such circumstances, it is our opinion that the complaint does not state a cause of action.

In the first place, the main purpose of the proceedings seems to be to enjoin the city from revoking the permit. The allegations of the complaint show that the legislative body of the city has acted, and that the permit was revoked, several months before the complaint was filed. ■ It is well-settled that an injunction lies only to prevent threatened injury and has no application to wrongs which have been completed. (*Parkinson Co.* v. *Building Trades Council,* 154 Cal. 581 [98 Pac. 1027, 16 Ann. Cas. 1165, 21 L. R. A. (N. S.) 550].)

■ In the second place, in so far as the revocation of the permit was predicated on the determination that there had been a breach of the ordinance granting the permit, the action of the council was at least *quasi* judicial. The sole method of review would be by *certiorari* or *mandamus.* Plaintiff cannot be permitted to try this issue of fact before the city council, and then, after losing its case there, proceed into the superior

court and secure a trial *de novo* on this same issue. It is to be noted that the complaint contains no allegation that the findings of fact set forth in the revocatory resolution were not supported by the evidence.

Of far more importance than either of these points is the fact that there are no allegations in the complaint that the revocatory ordinance was invalid or void, nor are any facts alleged showing that the city acted unreasonably, illegally, arbitrarily, or fraudulently. ■ The original licensing ordinance was well within the police power of the city. Under the permit secured by the plaintiff, it secured no right of property or of contract, in a constitutional sense. Whatever right is secured was subject to revocation. These principles are well settled.

In *Hevren* v. *Reed,* 126 Cal. 219, 222 [58 Pac. 536], the court, in referring to the power to revoke a permit granted under the police power, approved the following rule, quoting from a Connecticut case: " 'But aside from this consideration, if anything can be settled by legal authorities, the doctrine is too well established to be longer called in question, that a license of this character, whether revocable in terms or not, is neither a contract nor property in any constitutional sense, but is subject at all times to the police powers of the state government.' "

An instructive case on this subject is the decision of the Circuit Court of Appeals, Ninth Circuit, in *Marblehead Land Co.* v. *City of Los Angeles,* 47 Fed. (2d) 528 (*certiorari* denied, 284 U. S. 634 [52 Sup. Ct. 18, 76 L. Ed. 540]), passing upon the validity of certain Los Angeles ordinances. In that case, by amendment to a zoning ordinance, certain real property was brought within the residential zone. In the early part of 1927 a portion of the area was exempted from the restriction and oil drilling permitted thereon. In reliance on this amendment to the zoning ordinance, the oil company secured an oil lease on certain property within the area where drilling was permitted and immediately started work looking toward the development of the land for oil purposes. The oil company expended a total of $211,000 for this purpose. Later in 1927 the zoning ordinance was again amended to include the land in question within the residential zone. The power of the city to thus amend its ordinances was upheld. After holding that the legislative body of a city entrusted

with the police power has a wide discretion which cannot be interfered with by the courts, the court stated (p. 534) : "It has uniformly been held that there is no vested right in a permit or an ordinance of the nature of that involved here, by which the boundaries of the residential zone were changed to exclude appellants' property therefrom. That being true, appellants are without remedy unless on the whole it can be said that the final action of the city council, by which it again included their property in the residence zone, was so wholly unreasonable and unjustifiable under the circumstances as to be void. In this connection it is proper to consider the changes in the situation of the parties brought about by the ordinance excluding the lands of appellants from the residence district, but a mere change of policy or of legislation, however unfortunate the result may be to appellants, does not justify the courts in declaring void an ordinance exercising legitimate police power. The loss suffered by the appellants by reason of this change in legislative policy is no more a taking of their property than is the loss resulting to them by reason of being deprived of the right to develop the oil on their property or the right to use their land for other than residence purposes." This case was cited with approval in *Sunny Slope Water Co.* v. *City of Pasadena,* 1 Cal. (2d) 87, 94 [33 Pac. (2d) 672].

The rule that a license or permit granted under the police power creates no property or contract right, and that such license or permit is always subject to revocation is well settled. In *M'Kenzie* v. *M'Clellan,* 116 N. Y. Supp. 645, 646, the rule is stated as follows: "A license is only a permit to do a particular thing, and it is not property in any legal sense. It is a mere privilege granted by the municipal officer empowered to issue it, and is always revocable; the correlative power to revoke a license being a necessary consequence of the power to grant it."

In *People* v. *Department of Health,* 189 N. Y. 187 [82 N. E. 187, 188, 13 L. R. A. (N. S.) 894], the court held that a license issued under the police power was "not a contract or property, but merely a temporary permit issued in the exercise of the police powers to do that which otherwise would be prohibited". The court also held that it is only when the action of the city officials is "arbitrary, tyrannical, and unreasonable" that those unfairly affected have a remedy

by *mandamus.* (See, also, *Wallace* v. *Mayor etc. of the City of Reno,* 27 Nev. 71 [73 Pac. 528, 103 Am. St. Rep. 747, 63 L. R. A. 337], where many cases are collected and commented on.)

Several of the cases above-cited also hold, and there are many other cases holding to the same effect, that, so far as the power of revocation is concerned, it is immaterial that the licensing ordinance contains no express provision permitting revocation; that the power to revoke licenses of businesses subject to the police power is necessarily implied. The cases are collected and commented on in 3 McQuillin, Municipal Corporations, second edition, section 1108.

From these authorities it appears that the complaint here involved is fatally defective. All that is alleged is that in 1930 the predecessor of plaintiff secured a permit to drill for oil; that seven years later, after expending $68,000, the well was still non-producing after being sunk to a depth of 6,061 feet; that plaintiff has complied with the terms of the permit; that in 1937, after a hearing, the city council revoked the permit. If all those facts are accepted as true, as we must accept them on this appeal, they would not warrant the issuance of an injunction. An injunction can be granted only where the board revokes the permit arbitrarily, illegally, unreasonably or fraudulently. Without allegations of fact which, if proved, would show that the board acted arbitrarily, illegally, unreasonably or fraudulently, the complaint is fatally defective.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.